UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60106-CV-DIMITROULEAS/SNOW

TREVOR HILL, STACI HILL,
QAMARUN M. SHAIKH AND
MUJAHIDDIN SHAIKH, individually and
on behalf of all others similarly situated,

        Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC and
SOLUTIONSTAR,

        Defendants.

## MOTION TO DISMISS

This is a dispute over property inspection fees charged on home mortgage accounts. Companies, like defendant Nationstar Mortgage LLC ("Nationstar"), charged with protecting the security interests of lenders and investors are required to conduct monthly inspections of properties where the loans are in default. The plaintiffs, Trevor and Staci Hill (the "Hills") and Qamarun and Mujahiddin Shaikh (the "Shaikhs" and together with the Hills, "Homeowners"), agree that Nationstar had a right (and duty) to inspect the properties of delinquent borrowers, like themselves, and that when that happens the borrower has to pay for those inspections. They concede this is a matter of their own mortgage contracts as well as something required by investors who own or insure the defaulted loan.

Homeowners' only dispute is that Nationstar allegedly inspected too frequently and the fees were too high. Yet, out of this ordinary contract dispute, Homeowners attempt to gin up a

grand RICO conspiracy—seeking a nationwide class action—and plead the case with no fewer than seven causes of action.

The Complaint is fundamentally deficient because Homeowners never went through the simple, and contractually-required step, of notifying Nationstar of their dispute and asking for a voluntary resolution – such as the charging off of allegedly-unnecessary inspections fees (if any). The Court should enforce the contract and dismiss the case for that reason alone.

Even apart from that failure, each of Homeowners' claims must be dismissed.  First, the federal and state RICO causes of action—five claims in total—have multiple fatal defects, including that Homeowners have identified no cognizable enterprise, no racketeering activity, and no RICO injury.  Second, Homeowners' contract cause of action fails because they have not pled that they ever paid any of the subject fees.  And, third, Homeowners' claim in unjust enrichment against Nationstar's affiliate, Solutionstar Settlement Services LLC ("Solutionstar"), is inadequate because neither couple claims to have paid or provided any direct benefit to Solutionstar, whose only involvement was to arrange for the inspections by third parties.

For these, and the other reasons discussed below, Homeowners have failed to state any claim for relief and the case should be dismissed.

## FACTUAL BACKGROUND

The Mortgage Agreements and Practices At Issue

Homeowners' mortgage contracts stipulate that in the event their loan is in default, Nationstar can inspect their properties and "do and pay for whatever is *reasonable or appropriate* to protect [the] Lender's interest in the Property."  Compl. ¶ 64 (quoting ¶¶ 7 and 9 of Homeowners' mortgage contracts).[1]  Homeowners acknowledge that the contracts thereby

---

[1] Factual allegations taken from the Complaint are taken as true only for purposes of this motion. Defendants specifically deny any liability, and deny that any class could be certified in this case.

give Nationstar the right to inspect the properties of all borrowers in default.  Compl. ¶ 50.  This acknowledgement is unsurprising; courts have interpreted that and similar language in standard home mortgages to "unequivocally permit[] the lender" to conduct property inspections "and then charge them to the borrower."  *Majchrowski v. Norwest Mortg., Inc.*, 6 F. Supp. 2d 946, 964-65 (N.D. Ill. 1998); *see also In re Baber*, 523 B.R. 156, 162 (Bankr. E.D. Ark. 2014); *McFarland v. Wells Fargo Bank, N.A.*, 19 F. Supp. 3d 663, 676-77 (S.D.W.Va. 2014); *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 891 (S.D. Ohio 2003); *Mann v. Chase Manhattan Mortg. Corp.*, 2002 WL 32157516 (D.R.I. Mar. 7, 2002).

Not only do courts consider property inspections a standard aspect of loan servicing, but the loan servicing guidelines Homeowners cite in the Complaint show the central importance of the practice.[2]  For instance, the guidelines issued by Fannie Mae require servicers to conduct inspections of properties in certain stages of default, as well as those in disrepair and those suspected of being vacant (even if the loan is not in default).  Fannie Mae, Servicing Guide, Section   D2-2-11   (Feb.   11,   2015)   https://www.fanniemae.com/content/guide/servicing/ d2/2/11.html#Inspecting.20and.20Protecting.20a.20Vacant.20or.20Abandoned.20Property   (last visited Mar. 10, 2015).  Pursuant to those guidelines, property inspections should determine, among other things, whether or not the property is vacant or abandoned, the general condition of the property, and whether any repairs are necessary.  Fannie Mae, Form 30, Property Inspection Report,  https://www.fanniemae.com/content/guide_form/30.pdf  (last  visited  Mar.  10,  2015).

---

[2] Defendants do not agree with Homeowners' implicit assertion that GSE guidelines define for all purposes and in all situations what is "reasonable or appropriate" under the terms of their mortgage contract.  Defendants note that the guidelines cited by Homeowners generally "set forth the broad parameters under which servicers must exercise sound and professional judgment. . . ."   Fannie Mae, Servicing Guide, Section A2-1-01 (Feb. 11, 2015) https://www.fanniemae.com/content/guide/servicing/a2/1/01.html (last visited Mar. 10, 2015). The contours of the contracts in this respect are not necessary to the resolution of this motion.

Similarly, the guidelines issued by Freddie Mac require a servicer like Nationstar to inspect the property to determine a number of things including "[t]he condition of the property," "[i]f there is any waste, deterioration or vandalism," "[t]he occupancy status," "[i]f the property has been abandoned," "[i]f there are obvious environmental hazards," and "[i]f visible assert preservation is needed."  Freddie Mac, Single Family Seller/Servicer Guide, Ch. 65.30 (Dec. 18, 2014), http://www.freddiemac.com/singlefamily/guide/bulletins/pdf/121814Guide.pdf   (last   visited Mar. 12, 2015).  The purpose of these inspections is to protect lender's interest by protecting the value of the property securing the mortgage.  *See* Fannie Mae, Servicing Guide, Section A2-1-01 (Feb.  11,  2015)  https://www.fanniemae.com/content/guide/servicing/a2/1/01.html  (last  visited Mar. 10, 2015); Freddie Mac, Single Family Seller/Servicer Guide, Ch. 65.29 (Dec. 18, 2014) http://www.freddiemac.com/singlefamily/guide/bulletins/pdf/121814Guide.pdf   (last   visited Mar. 12, 2015).

The terms of the mortgage agreements require the Homeowners to reimburse Nationstar for fees incurred for property inspections.  Compl. ¶ 64.  The contract contains no specific fee cap or requirement.

Nationstar services both the Hill loan and the Shaikh loan.  Compl. ¶ 1.  During 2014, it ordered property inspections on multiple occasions, on both couples' properties.  In all instances, Nationstar engaged its affiliate Solutionstar to arrange for someone to physically conduct the inspections.  Compl. ¶ 81.  Homeowners allege that Solutionstar charges Nationstar a $15 fee for each inspection but, in fact, pays the inspectors less and pockets the difference, with Solutionstar supposedly doing no work.  Compl. ¶ 18.  Nationstar and Solutionstar allegedly increased the fee charged for property inspections from $9.15 to $15 to accommodate this plan.  Compl. ¶ 6.

4

Allegations as to the Hills

In 2007, the Hills obtained a mortgage loan secured by real property located in Fort Lauderdale.  Compl. ¶ 10.  Their mortgage, which is now serviced by Nationstar, was originated by The Addison Mortgage Group and was prepared using a Fannie Mae/Freddie Mac Uniform Instrument ("Fannie Mae/Freddie Mac form").   Compl. ¶ 10.   In October 2011, the Hills defaulted on their mortgage obligations and they have not alleged that they paid Nationstar (or anyone) on the loan since then.  Compl. ¶ 10.

The Hills allege that Nationstar has charged them excessive fees for property inspections, including two inspection charges they assert that were each "dated" September 30, 2014. Compl. ¶ 101.  They assert that in the first ten months of 2014, Nationstar charged them $278 in property inspection fees.  Compl. ¶ 101.  The Hills do not allege that they have paid any of the fees allegedly assessed for property inspections.  Although they do allege that their attorneys have been in contact with Nationstar, the Hills do not allege that they or their attorneys have brought the issues raised in this Complaint to Nationstar's attention prior to initiating the suit. Compl. ¶ 10.

Allegations as to the Shaikhs

In 2005, the Shaikhs obtained their loan secured by property located in Miami. Compl. ¶ 11.  Their mortgage, which is now serviced by Nationstar, was originated by First Magnus Financial Corporation, and was also prepared using a Fannie Mae/Freddie Mac form. Compl. ¶ 11.  In August 2009, the Shaikhs defaulted on their loan; they too do not allege that they paid Nationstar (or anyone) anything since.  Compl. ¶ 11.

The Shaikhs allege that Nationstar has charged them excessive fees for property inspections, including three inspections between May 27, 2014 and June 18, 2014. Compl. ¶ 100.  They assert that in the first six months of 2014, Nationstar charged them $995 in

property inspection fees.  Compl. ¶ 100.  The Shaikhs do not allege that they have paid any of the

fees allegedly assessed for property inspections.  Also, like the Hills, the Shaikhs allege that they

and their attorneys have been in touch with Nationstar, but do not allege that they or their

attorneys notified Nationstar of the issues raised in their Complaint prior to filing suit.

Compl. ¶ 11.

## ARGUMENT

### I.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE HOMEOWNERS DID NOT COMPLY WITH THE REQUIREMENT THAT THEY PROVIDE NOTICE AND AN OPPORTUNITY TO CURE.

All of Homeowners' claims are barred by the terms of their mortgage contracts.

Paragraph 20 of both mortgage contracts at issue states:

> Neither Borrower nor Lender may commence, join, or be joined to
> any judicial action (as either an individual litigant or a member of a
> class) that arises from the other party's actions pursuant to this
> Security Instrument or that alleges that the other party has
> breached any provision of, or any duty owed by reason of, this
> Security Instrument, until such Borrower or Lender has notified the
> other party (with such notice given in compliance with the
> requirements of Section 15) of such alleged breach and afforded
> the other party hereto a reasonable period after the giving of such
> notice to take corrective action.

*See*, Compl. Exs. B and C at ¶ 20.  Neither the Hills nor the Shaikhs allege that either provided

notice of the allegedly improper inspection fees before filing this suit.  Therefore, the Complaint

should be dismissed.  *See, e.g.*, *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138329, at

*2 (E.D. VA Dec. 10, 2010) and *Niyaz v. Bank of Am.*, 2011 WL 63655, at *2 (E.D. Va. Jan. 3,

2011).

As this Court has recognized, the notice and cure obligation bars a plaintiff's claims

when "it applies by its terms to [the] action."  *St. Breux v. U.S. Bank, N.A.*, 919 F. Supp. 2d 1371,

1375 (S.D. Fla. 2013).[3]  Homeowners' claims are entirely based on their mortgage contracts, specifically Paragraph 9, which grant Defendants the right to "do and pay for whatever is *reasonable or appropriate* to protect the Lender's interests in the Property and rights under [the mortgage agreement] including protecting and/or assessing the value of the Property. . . ."  *See* Compl. ¶ 64; Compl. Exs. B and C ¶ 9.[4]  Homeowners' allegation that Defendants violated Paragraph 9 by charging too much for each inspection, by inspecting too frequently, and by inspecting without reason to do so (Compl. ¶ 17) relates to the mortgage agreements because the conduct "occur[ed] as a fairly direct result of the performance of contractual duties."  *Telecom Italia SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001).[5]  Homeowners' failure to provide notice and an opportunity to cure is fatal to their claims.  *Johnson*, 2010 WL 5138329, at *2.

## II.   THE COMPLAINT OTHERWISE IS DEFICIENT, AND SHOULD BE DISMISSED.

Although Homeowners' failure to provide notice and an opportunity to cure disposes of all their claims, their claims fail on the merits as well.  Homeowners essentially contend that Defendants did three things wrong: (1) Nationstar allegedly conducted inspections too

---

[3] In *St. Breux*, this Court concluded that plaintiff's Truth in Lending Act claims were not barred by the notice and cure provision because the conduct at issue involved "a duty owed by reason of TILA" as opposed to one owed because of the mortgage contract.  *St. Breux*, 919 F. Supp. 2d at 1376.

[4]  Homeowners also quote the terms of FHA mortgages and a federal regulation applicable to FHA mortgages, which they allege contains a different standard (Compl. ¶¶ 66-68, 73), but since these two couples do not have an FHA mortgage, the citations are irrelevant.

[5]  Homeowners' attempts to write GSE guidelines and out-of-state statutes into the mortgage contracts do not change the fact that their sole claim is that Defendants have breached Paragraph 9.  Even assuming Homeowners are correct about the content and applicability of these GSE guidelines and statutes—and they are not—these guidelines and statutes are alleged to serve to define what is "reasonable or appropriate" under Paragraph 9.

frequently; (2) Nationstar allegedly charged them too much; and (3) Solutionstar allegedly retained part of the inspection fee, causing the overall cost of the fees to be too high.  Defendants deny each of these allegations.  But even if one or more of them were true, the Complaint does not state a claim for relief.

### A.     Homeowners' RICO Claims Fail To Meet Several Separate Requirements.

Homeowners' bring Racketeer Influenced and Corrupt Organizations ("RICO") causes of action under both the federal Act and Florida law.  Compl., Counts I-V.  They are based on the assertion that Nationstar and Solutionstar engaged in an alleged "scheme to obtain money by means of false pretenses, representations, or promises" by which they charged the Hills and the Shaikhs fees for property inspections that "were illegally inflated by the kickback retained, were too frequent, and were not authorized by the terms of the mortgage contracts. . . ."  Compl. ¶ 98. In the case of each statute, the Homeowners assert that the conduct amounted to predicate acts of mail and wire fraud (Count I (RICO), Count III (Florida RICO)) and conspiracy (Count II (RICO), Count IV (Florida RICO)).  Homeowners also claim in Count V that they are entitled to damages for Defendants' alleged RICO violations under the Florida Civil Remedies for Criminal Practices Act, 772.103, Florida Statutes (CRCPA).  Compl. ¶ 155-163.  Although there are minor differences among those statutes that are not relevant to the case at bar, the Florida RICO statute is modeled after the federal RICO Act (*see, e.g.*, *Gross v. State*, 765 So.2d 39, 42 (Fla. 2000)), and the CRCPA contains the same elements as the state and federal RICO statutes (*Eagletech Comms., Inc. v. Bryn Mawr Inv. Grp, Inc.*, 79 So.3d 855, 864 (Fla. Dist. Ct. App. 2012)[6]), so this

---

[6] The CRCPA has minor differences from the RICO laws, such as the use of the phrase "[p]attern of criminal activity" in the CRCPA and "[p]attern of racketeering activity" in the Florida RICO Act (*compare* Fla. Stat. Ann. § 895.02(4) and 772.102(4)); some differences in predicate offenses (*compare* Fla. Stat. Ann. § 895.02(1)(a)); and the inclusion of street gangs as an enterprise under the Florida RICO Act.  *Compare* Fla. Stat. Ann. § 895.02(3) and § 772.02(3). These are not material to this motion.

Court should address all of those five claims together.  *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004) ("Because 'Florida courts often look to the Federal RICO decisions for guidance in interpreting . . . the act[,]' . . . the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims.") (quoting *Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276, 1284 (M.D. Fla. 1999)).  We will refer to Counts I-V as "RICO claims" throughout.

To state their civil RICO claims, Homeowners must allege, *inter alia*, (1) conduct; (2) of an enterprise; (3) through a pattern of racketeering activity, involving predicate acts of wire or mail fraud; (4) that is the proximate cause of injury to the Homeowners.  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006).  Homeowners' RICO claims fail for three independently sufficient reasons:  Homeowners do not allege a cognizable enterprise; Homeowners do not allege a pattern of racketeering activity; and Homeowners do not allege injury.  As a result, Counts I-V must be dismissed.

**B.    The Complaint Does Not Allege A Cognizable RICO Enterprise.**

The alleged "enterprise" in the Complaint—Nationstar, Solutionstar and "vendors who perform the property inspections" (Compl. ¶ 89 & illustration in Compl. page 29)—is not a valid RICO enterprise, and so Counts I-V should be dismissed.  In *Boyle v. United States*, the Supreme Court defined the pleading requirements for an associated-in-fact enterprise, stating that the RICO enterprise must have at least three features:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  556 U.S. 938, 946 (2009).  The Court explained that members of the group must share the "common purpose of engaging in a course of conduct" and have sufficient continuity of "interpersonal relationships" showing that the alleged members of the enterprise have "joined together" in order to pursue that purpose.  *Id.* (citations omitted).  In short, the

alleged enterprise must *be* something concrete and enduring, not ephemeral or even imaginary. This supposed enterprise fails the *Boyle* test.

      1.    <u>The Vendors Are Not Alleged To Have A Common Purpose Or To Participate In Common Conduct.</u>

Rather than alleging an alliance that has come together in a meaningful way, Homeowners posit an enterprise that consists only of a company and its affiliate and an unnamed number of completely unrelated third parties from which they order services. Homeowners plead no facts that, if proven, would establish that the property inspectors across the country—many of whom presumably compete with one another for business and/or serve as vendors for Nationstar's competition—worked together with Nationstar and Solutionstar for a common purpose of fraud. *See Boyle*, 556 U.S. at 946 (members of the alleged enterprise must share the "common purpose of engaging in a course of conduct"). In fact, Homeowners have alleged nothing at all about the conduct of these vendors other than that "work orders are automatically sent, via Solutionstar, to" the inspectors, they thereafter "perform drive-by inspections" on residential property secured by mortgage loans, and they are paid for the work. Compl. ¶¶ 81, 131. Proof that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . would not be enough to show that the individuals were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4. *See also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007).

Homeowners seem to be positing a "hub-and-spoke" conspiracy, with Nationstar and its affiliate Solutionstar as the hub and each vendor as a separate spoke. But the Eleventh Circuit—like numerous other courts—has held that without some sort of "rim" linking the spokes, there is no coming together of a group sufficient to make out a claimed RICO enterprise. *United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004) ("[W]here the 'spokes' of a conspiracy have no

knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy, but rather as many conspiracies as there are spokes."); *see also, e.g., VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 700 (6th Cir. 2000); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183 (D. Mass. 2003); *N.Y. Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, 1998 WL 695869, at *5 (S.D.N.Y. Oct. 6, 1998) ("Such a scheme is not one true common law conspiracy nor is it a RICO enterprise."); *Cedar Swamp Holdings*, 487 F. Supp. 2d at 450; *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994).  It is not enough to allege that each "spoke" involves the commission of similar acts—to establish enough continuity to allege a RICO enterprise there must be factual allegations that, if true, would establish the participants on the spokes shared a common purpose and worked together or consciously in parallel to achieve that purpose.  *First Nationwide Bank*, 820 F. Supp. at 98 ("Plaintiff has not specified how all defendants, including various borrowers, joined together as a group to perpetrate the frauds alleged in the Amended Complaint.").

In an attempt to meet this requirement, the Complaint makes only conclusory assertions that this alleged enterprise "is an ongoing organization" made up of members that "function as a continuing unit and share a common purpose of maximizing their profits."  Compl. ¶ 90-91. Homeowners further suggest that "[t]he Enterprise is linked through contractual relationships, agreements, access to Nationstar Servicing System, financial ties, and coordination of activities. . . ."  Compl. ¶ 94.  Then, apparently recognizing that the allegations of the complaint are insufficient, Homeowners suggest that "[w]ritten discovery will prove the Enterprise."  *Id.*

All of this is plainly insufficient, particularly in light of *Twombly*'s admonishment to litigants to plead sufficient facts to make a conspiracy plausible, rather than one backed by mere

"labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007).  Courts have repeatedly held that these kinds of conclusory assertions, without facts showing a relationship and shared efforts among the "spokes," are insufficient to withstand a motion to dismiss.  *See*, e.g., *In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 73220, at *118 (D.N.J. Sept. 28, 2007) ("in order to draw a structure cognizable as a RICO enterprise, plaintiffs have to assert actual facts drawing the 'rim' interconnecting Insurer-Defendants, instead of merely stating plaintiffs' conclusion that Insurer-Defendants must have been interconnected") (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d at 184).  Nor can pleading requirements be relaxed by promises of what future discovery may reveal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 685-6 (2009).  Where, as here, the enterprise theory consists of "a group of commercial third-party entities *apparently unrelated to each other* who contract on a regular basis with some of the Defendants . . . [p]laintiffs have not pled a sufficient association between these third-party entities for the purposes of a RICO enterprise."  *In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1262 (S.D. Fla. 2001) (emphasis in original).[7]

> 2.  The Complaint Does Not Allege A Plausible Enterprise Because it Contains Essentially No Substance About A Key Element Of The Alleged Enterprise, The Property Inspection Vendors.

Apart from the inadequate nature of the alleged common purpose and conduct, the "enterprise" is too amorphous to meet RICO standards.  Even though the key players in the supposed enterprise are the property inspection vendors – for, without them, no RICO claim

---

[7] Homeowners attempt to bolster their claims by citing cases filed against the Defendants in other courts.  *See e.g.*, Compl. ¶ 102 (summarizing *Sanchez v. Nationstar Mortgage, LLC*, No. 0:14-cv-62512 (S.D. Fla) and *Falconer v. Nationstar Mortgage, LLC*, No. 1:14-cv-24275 (S.D. Fla.)).  It goes without saying that Homeowners cannot support their own claims simply by citing filed, but as yet undecided, lawsuits.  Nonetheless, Nationstar notes that a motion to dismiss has been fully briefed in *Sanchez* and that the parties in *Falconer* stipulated to a joint dismissal with prejudice on January 29, 2015.  Neither *Sanchez* nor *Falconer* involved a RICO claim.

could be stated, as a parent and its subsidiary cannot be a RICO enterprise standing alone (*see, e.g.*, *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1212-13 (M.D. Fla. 2004)) – the Complaint does not identify a single vendor.  The Complaint also does not explain how any one or all of the vendors work together, rather than function as independent businesses scattered throughout the country.  Instead, all the Court and Defendants are given is that "Solutionstar . . . utilized a web of outside vendors. . . ."  Compl. ¶ 3.  Courts have consistently held that such a "nebulous, open-ended description . . . does not sufficiently identify" a RICO enterprise for purposes of Rule 8.  *Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*, 54 F. Supp. 2d 1127, 1135 (M.D. Fla. 1999) (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995)); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1091 (N.D. Cal. 2006); *accord Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000).

The Sixth Circuit, in *VanDenBroeck*, for example, rejected a similar claim that a mortgage lender and every secondary market mortgage investor had formed a broad RICO enterprise.  *See* 210 F.3d at 700.  In that case, customers of a lender alleged that the defendant mortgage company's relationships with numerous unnamed secondary market investors, to which it sold mortgage loans, constituted a RICO enterprise.  The Sixth Circuit, in affirming the dismissal of plaintiff's RICO enterprise allegations, stated that "[t]here is no allegation that there were a discrete number of secondary lenders that were used, which means that this conspiracy could have transpired with any lender in the secondary lending market."  *Id.*  Accordingly, the court held that "the enterprise alleged to exist in this case is too unstable and fluid an entity to constitute a RICO enterprise."  *Id.*

Homeowners' alleged "enterprise" is fatally defective for the same reasons.  If *Boyle* stands for nothing else, it is that the RICO enterprise must actually be some sort of association

among identifiable persons.  Homeowners offer nothing specific about the vendors—such as who they are, where they are, how they are selected and used, or how many there are.  A RICO enterprise is not plausible if there is no substance to assertions about who the supposed conspirators are.  Without more, the RICO claims fail for lack of specificity.

    3. <u>Without Any Substantial Allegation About the Vendors, The Complaint Does Not Allege An Enterprise Distinct From Its Participants.</u>

   Having failed to allege with any substance that the third-party vendors have a common purpose of misconduct and have come together with anyone, and having failed to allege anything specific at all about the vendors, Homeowners' enterprise-in-fact essentially consists of Nationstar and Solutionstar.  Yet, to state a cognizable RICO claim Homeowners, "must name a RICO person distinct from the RICO enterprise."  *United States v. Goldin Indus.*, 219 F.3d 1268, 1271 (11th Cir. 2000).  This alleged enterprise fails because affiliated corporate entities, such as a parent and its subsidiary, are insufficiently distinct to satisfy RICO's requirement that a defendant "person" must be distinct from the alleged enterprise.  *Schoedinger v. United HealthCare of the Midwest, Inc.*, 557 F.3d 872, 878 (8th Cir. 2009); *Fogie v. Thorn Ams. Inc.*, 190 F.3d 889, 896-97 (8th Cir. 1999).  *See also Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 449 (1st Cir. 2000).

   In *Fogie*, for example, the Eighth Circuit held that the mere fact that a parent and its subsidiary corporation are legally separate entities is not enough to satisfy RICO's distinctive requirement to show an associated-in-fact enterprise consisting of those two corporations.  190 F.3d at 898.  The Court found that "there must be a greater showing that the parent and subsidiary are distinct [rather] than the mere fact that they are separate legal entities.  To

conclude otherwise would be to read the distinctiveness requirement out of RICO." *Id.*; *see also United States v. Computer Scis. Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982).

Homeowners do not allege how Nationstar and Solutionstar are distinct for purposes of RICO.   Instead, they merely rest on the conclusory allegation that "[w]hile Defendants participate in and are members of the Enterprise, they also have a separate and distinct existence apart from the Enterprise."   Compl. ¶ 95.   Such conclusory allegations are insufficient. *Twombly*, 550 U.S. at 555 (allegations of a complaint must be supported by more than "labels and conclusions").   Accordingly, the "enterprise" must fail.

### C.      Homeowners Have Failed To Plead A Pattern Of Racketeering Activity.

Homeowners have also failed to adequately plead a pattern of racketeering activity consisting of at least two related, qualifying predicate acts.   *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290-91 (11th Cir. 2010).   Here, Homeowners allege that the predicate acts consisted of mail or wire fraud (18 U.S.C. §§ 1341, 1343),[8] based on allegedly misleading account statements given to the Homeowners by Nationstar.  Compl. ¶¶ 98-101.

The allegations of mail or wire fraud fall far short of the statutory test for either.   Under the cited statutes, mail or wire fraud occurs when a person "(1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme."   *Am. Dental Ass'n*, 605 F.3d at 1290 (citation omitted).   Rather than allege that Defendants concealed either the frequency of inspections or the cost of each inspection, Homeowners allege that Nationstar informed them each time that the inspection had occurred and the amount of every charge.  Compl. ¶ 99 ("These mortgage statements detail the amounts

---

[8] Homeowners' allegations appear to solely involve mail fraud, as they have not provided a single allegation regarding the use of "wire, radio, or television" as required by 18 U.S.C. § 1343.  Accordingly, their claim that Defendants' have committed acts of wire fraud fail.

due on loans with certain itemized charges for fees."). The inspections may have been too frequent (which Defendants deny) or too expensive (which Defendants also deny), but it cannot be mail or wire fraud to tell someone what you are charging and why. *In re Checking Account Overdraft Litig.*, 797 F. Supp. 2d 1323, 1330 (S.D. Fla. 2011) ("At best, Plaintiffs allege mail and wire fraud occur where accurate account statements are mailed to customers . . . . Such cannot be the basis for a RICO claim.")

Homeowners will doubtless point to their allegations that Nationstar committed fraud because "[b]y issuing mortgage statements. . . Nationstar represented to Plaintiffs . . . that all amounts listed were lawful and appropriate fees and charges." Compl. ¶ 99. This does not meet the pleading requirements of Rule 9(b), which applies to all RICO claims based on alleged fraud. *Am Dental Ass'n*, 605 F.3d at 1291 (RICO allegations based on predicate acts of mail and wire fraud "must comply . . . with Fed. R. Civ. P. 9(b)'s heightened pleading standard"). Among other things, to meet the Rule, Homeowners' Complaint must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted). Homeowners' bare assertion that "[b]y issuing monthly statements" Nationstar "represented" something is not enough – they must point to "the precise statements, documents, or misrepresentations made." *Id.*[9] *See AstroTel, Inc. v. Verizon Fla., LLC*, 2012 WL 1581596, at *6 (M.D. Fla. May 4, 2012) (nonspecific allegations of improper charges did not meet Rule 9(b) requirements).

Homeowners also suggest that mail or wire fraud occurred by omission, because the monthly statements "omitted Solutionstar's role and affiliation with Nationstar." Compl. ¶ 99.

---

[9]   Of course, they cannot do so, because Nationstar made no representation on its monthly statement that fees "were lawful or appropriate," which, presumably, Homeowners will concede.

Although omission can form a basis for fraud in some circumstances, it qualifies only when that omission is "material" and "intended to create a false impression." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000). The omission of Solutionstar's role in Nationstar's loan servicing is not material as a matter of law because a reasonable person deciding whether or not to pay a fee "would not have relied on such an omission." *Beck v. Prupis*, 162 F.3d 1090, 1096 (11th Cir. 1998). It strains credulity to suggest that a homeowner faced with a $15 inspection-fee charge would pay the fee if his mortgage statement omitted reference to a servicing vendor, but refuse in light of such a disclosure. Additionally, the alleged omission of Solutionstar's role is not "intended to create a false impression" because Homeowners do not allege that the mortgage statements suggest that Nationstar itself conducted the property inspections. As a mortgage servicer, Nationstar was under no obligation to disclose its relationship with Solutionstar. See *Langford*, 231 F.3d at 1313-14 (discussing the need to disclose as a result of statutory obligations and special relationships). Generally, the relationship between debtor and creditor under Florida law is neither fiduciary in nature nor special. *See Carpenter v. Cmty. Bank of Homestead*, 710 So.2d 65, 66 (Fla. Dist. Ct. App. 1998).[10] Thus, Homeowners' assertion that Defendants "omitted Solutionstar's role and affiliation with Nationstar" does not save their RICO claims.

---

[10] Nationstar has not concealed its relationship with Solutionstar in any event. In their Complaint, the Homeowners themselves acknowledge that Nationstar reported in its public SEC filings that it obtained services from Solutionstar in its public SEC filings. See Compl. ¶ 92. Read fairly, the Homeowners allege that Nationstar is open about its relationship with Solutionstar, but simply fails to reiterate it in the account statements it mails borrowers. The Homeowners' allegation that Nationstar is open about its relationship with Solutionstar, but simply failed to reiterate it in the account statements it mails borrowers hardly supports a conclusion that Nationstar engaged in a material omission.

### D.        Homeowners Have Not Pled The Alleged Acts Caused Them Injury.

Homeowners' RICO claims also must be dismissed because they have not sufficiently pled that they have been injured by Defendants' conduct.   In alleging facts about their transactions, and how the alleged RICO violations caused them harm, the Hills and Shaikhs each allege only a bare conclusion: "Charging the [Hill/Shaikh] Plaintiffs for these inspections caused actual injury to their business and property."  Compl. ¶¶  100 (Shaikh), 101 (Hill).  While that recites the RICO injury standard, such conclusory allegations simply do not meet Rule 8 standards.  *Iqbal*, 556 U.S. at 678.  It is far from evident how "charging" a fee to a seriously-delinquent account creates an injury.

Homeowners' failure is neither minor nor forgivable.  Nowhere in their Complaint do Homeowners specifically allege, for example, that they have paid any of the fees.  And while the Complaint alleges in a conclusory fashion that "Plaintiffs and the RICO Class" suffered injuries including, *inter alia*, "late fees" and a "cloud" on their creditworthiness, without any specific facts about what happened specifically to the Hills or the Shaikhs, such collective assertions do not meet Rule 8.  In sum, Homeowners have failed to plead any injury caused by Defendants' conduct, and their RICO claims must be dismissed.

### III.    HOMEOWNERS' BREACH OF CONTRACT CLAIM MUST BE DISMISSED.

Although the conduct forming the basis of the Complaint fits most cleanly into a breach of contract theory, Homeowners' contract cause of action fails to state a claim because they do not allege that they suffered contract damages.  To state a claim for breach of contract under Florida law, Homeowners must assert "(1) a valid contract, (2) a material breach, and (3) damages."  *Ferguson Ents., Inc. v. Astro Air Conditioning & Heating, Inc.*, 137 So.3d 613, 615 (Fla. Dist. Ct. App. 2014).   Contract damages in a case such as this are measured by the

difference between what the non-breaching party paid and what the non-breaching party should

have paid.  *See  Tabatchnick's II, Inc. v. Davis*, 386 So.2d 37, (Fla. Dist. Ct. App. 1980) ("Where

a right of action for breach exists, compensatory damages will be given for the net amount of the

losses caused and gains prevented by the defend-ant's breach, in excess of savings made

possible. . . .") (quoting Restatement First of Contracts § 329) Restatement (First) of

Contracts § 329) and *Morgan Stanley & Co. Inc. v. Coldeman (Parent) Holdings Inc.*, 955 So.2d

1124, 1128 (Fla. Dist. Ct. App. 2007).

Here, Homeowners allege that Nationstar breached their contracts by charging them for

excessive and unreasonable inspection fees.   Compl. ¶¶ 169-172.   Yet, nowhere in their

Complaint do Homeowners allege that they have actually paid any of these fees.  As a result,

they have suffered no cognizable contract damages, and their Complaint must be dismissed.

## IV.   HOMEOWNERS' UNJUST ENRICHMENT CLAIM MUST ALSO BE DISMISSED.

Homeowners' unjust enrichment cause of action against Solutionstar (Count VII) must be

dismissed because Homeowners have not pled a necessary element of their claim.   In order to

sue for unjust enrichment under Florida law, Homeowners must allege that they have (1)

"conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the

defendant has accepted or retained the benefit conferred and (4) the circumstances are such that

it would be inequitable for the defendant to retain the benefit without paying fair value for it."

*Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc.*, 695 So.2d 383,

386 (Fla. Dist. Ct. App. 1997).   Importantly, state law restricts the cause of action to allow

recovery only if the plaintiff "directly conferred a benefit on the defendants."  *People's Nat'l*

*Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So.2d 876, 879 (Fla. Dist. Ct. App.

1996).  That latter element is missing here.

19

Here, Homeowners do not even attempt to assert that they paid or gave anything to Solutionstar.  Even assuming Homeowners had paid someone something, that payment would have been to Nationstar.  The Homeowners' assertion that Solutionstar benefits indirectly – by charging Nationstar an inspection fee that is supposedly inflated, retaining a portion for itself (Compl. ¶¶ 6, 187) – even if true, cannot support a cause of action against Solutionstar for unjust enrichment.  Defendants deny there is any "kickback," but merely throwing around loaded charges cannot distract attention from the indirect nature of the alleged enrichment.

The unjust enrichment allegation fails for the further reason that it is not supported by sufficient allegations of fact.  Homeowners allege that Nationstar raised its inspection fee from $9.15 to $15 (Compl. ¶ 6), and they allege that Solutionstar retains a portion of that fee (*id.*), but nowhere do Homeowners specifically allege that the property inspection vendors used on their loans charged Solutionstar anything less than $15.  If these vendors charge Solutionstar $15 per inspection, then there is no portion of the $15 fee charged to their account for Solutionstar to retain.  Without more, the mere speculation that Solutionstar profits from arranging for the inspections is insufficient to support the unjust enrichment cause of action.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

Date:  March 16, 2015

**AKERMAN LLP**
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel. 305-374-5600
Fax 305-374-5095

/s/ Brendan I. Herbert
WILLIAM P. HELLER, ESQ.
Florida Bar No. 987263
E-mail:  william.heller@akerman.com
LAWRENCE D. SILVERMAN, ESQ.
Florida Bar No. 007160
E-mail: lawrence.silverman@akerman.com
BRENDAN I. HERBERT, ESQ.
Florida Bar No. 076925
E-mail: brendan.herbert@akerman.com

Thomas M. Hefferon, Esq. (*Of Counsel*)
John C. Raffetto, Esq. (*Of Counsel*)
Goodwin Procter, LLP
901 New York Ave., NW
Washington, DC 20001
THefferon@goodwinprocter.com
JRaffetto@goodwinprocter.com

*Counsel for Defendants Nationstar Mortgage LLC*
*and Solutionstar Settlement Services LLC*

<u>C</u><small>ERTIFICATE OF</small> <u>S</u><small>ERVICE</small>

I HEREBY CERTIFY that a true and correct copy of *Defendants' Motion to Dismiss* was served on March 16, 2015, on all counsel or parties of record on the following Service List via CM/ECF.

/s/ Brendan I. Herbert
Attorney

**<u>Service List</u>**
***Hill, et al. v. Nationstar Mortgage LLC and Solutionstar***
**<u>Case No. 15-cv-60106-Dimitrouleas/Snow</u>**
**<u>U.S. District Court, Southern District of Florida</u>**

**Counsel for Plaintiffs**
(service by CM/ECF)

Yechezkwel Rodal, Esq.
LOAN LAWYERS LLC
2150 S. Andrews Avenue, 2nd Floor
Ft. Lauderdale, Florida  33316
Tel.: (954) 523-4357
Email: Chezky@Floridaloanlawyers.com

Shanon J. Carson, Esq.
Patrick F. Madden, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel: (215) 875-4656
Email:  scarson@bm.net
Email:  pmadden@bm.net