# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 15-60106-CV-DIMITROULEAS/SNOW

TREVOR HILL, STACI HILL,
QAMARUN M. SHAIKH AND
MUJAHIDDIN SHAIKH, individually and
on behalf of all others similarly situated,

       Plaintiffs,

   v.

NATIONSTAR MORTGAGE LLC and
SOLUTIONSTAR,

       Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# Table of Contents

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND .................................................................................................... 2

    A.  Plaintiffs' Relationship and Experience with Defendants ............................... 2

    B.  Defendants' Scheme to Charge Improper Property Inspections at Inflated Prices  3

III.  ARGUMENT ....................................................................................................... 4

    A.  Legal Standard ................................................................................................ 4

    B.  Plaintiffs Properly Pleaded Their RICO Claims .............................................. 5

        1.  Plaintiffs allege a cognizable RICO enterprise ........................................ 6

        2.  Plaintiffs adequately allege that Defendants engaged in a pattern of racketeering activity ................................................................................................................ 9

        3.  Plaintiffs sufficiently allege RICO injury ............................................... 12

    C.  Plaintiffs Properly Allege Breach of Contract ............................................... 13

    D.  Plaintiffs State a Claim for Unjust Enrichment ............................................. 16

    E.  Plaintiffs Were Not Obligated to Provide Pre-Suit Notice to Defendants ............. 17

        1.  The issue of pre-suit notice cannot be resolved on the pleadings ......................... 17

        2.  The pre-suit notice provision does not apply to claims that do not arise from the mortgage contract .......................................................................................... 18

        3.  The pre-suit notice provision does not apply to suits against Defendants, neither of which are the "Lender" .......................................................................................... 19

IV.  CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American General Life and Acc. Ins. Co. v. Ward*,
  509 F. Supp. 2d 1324 (N.D. Ga. 2007) ................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................5

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp. LLC*,
  608 F. Supp. 2d 1349 (S.D. Fla. 2009) ................................................................5

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ......................................................................................4, 5

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................................................6, 12

*Boyle v. United States*,
  556 U.S. 938 (2009) ..........................................................................................7, 9

*Casey v. Citibank, N.A.*,
  915 F. Supp. 2d 255 (N.D.N.Y. 2013) ................................................................14

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ..............................................................................................7

*Chaparro v. Carnival Corp.*,
  693 F.3d 1333 (11th Cir. 2012) ............................................................................5

*Delmar Financial Co. v. ISGN Corp.*,
  No. 4:14-cv-147, 2014 WL 3734277 (E.D. Mo. July 28, 2014)............................17

*DuMont v. Litton Loan Servicing, LP*,
  No. 12-cv-2677, 2015 WL 1061138 (S.D.N.Y. Mar. 11, 2015)............................15

*Fletcher v. OneWest Bank, FSB*,
  798 F. Supp. 2d 925 (N.D. Ill. 2011) ..................................................................15

*Hamilton v. Allen-Bradley Co., Inc.*,
  244 F.3d 819 (11th Cir. 2001) ..............................................................................4

*Huyer v. Wells Fargo & Company ("Huyer II")*,
  295 F.R.D. 332 (S.D. Iowa. 2013) .................................................................. passim

*In re Countrywide Fin. Corp. Mortg. Mktg & Sales Prac. Litig.*,
  601 F. Supp. 2d 1201 (S.D. Cal. 2009).................................................................................6

*In re: Ocwen Loan Servicing Litig.*,
  491 F.3d 638 (7th Cir. 2007) ..............................................................................................14

*Johnson v. Countrywide Home Loans, Inc.*,
  No. 1:10-cv-1018, 2010 WL 5138392 (E.D. Va. Dec. 10, 2010)..........................................20

*Knight v. E.F. Hutton and Co., Inc.*,
  750 F. Supp. 1109 (M.D. Fla. 1990)......................................................................................6

*Mahdavieh v. SunTurst Mortg., Inc.*,
  No. 13-cv-62801, 2014 WL 1365425 (S.D. Fla. Apr. 7, 2014)........................................13, 14

*Mahoney v. Sony Music Entertainment*,
  No. 12-cv-5045, 2013 WL 491526 (S.D.N.Y. Feb. 11, 2013) ...............................................18

*Newsome v. BAC Home Loans Servicing, LP*,
  No. 11-cv-423, 2011 WL 2462315 (N.D. Cal. June 21, 2011)........................................14, 15

*Niyaz v. Bank of Am.*,
  No. 1:10-cv-796, 2011 WL 63655 (E.D. Va. Jan. 3, 2011) ...................................................20

*Orser v. Select Portfolio Servicing, Inc.*,
  No. 05-c-1507, 2005 U.S. Dist. LEXIS 39737 (W.D. Wash. Dec. 20, 2005) ........................19

*Patrick v. Teays Valley Trustees, LLC*,
  No. 3:12-cv-39, 2012 WL 5993163 (N.D.W.Va. Nov. 30, 2012) ..........................................20

*Perryman v. Litton Loan Servicing, LP*,
  No. 14-cv-2261, 2014 WL 4954674 (N.D. Cal. Oct. 1, 2014) ................................................6

*Reynolds v. Condon*,
  908 F. Supp. 1494 (N.D. Iowa 1995).....................................................................................7

*Romano v. Motorola, Inc.*,
  No. 07-CIV-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) ....................................4, 16

*Simpson v. Sanderson Farms, Inc.*,
  744 F.3d 702 (11th Cir. 2014) .............................................................................................12

*St. Breux v. U.S. Bank, Nat. Ass'n*,
  919 F. Supp. 2d 1371 (S. D. Fla. 2013) (Dimitrouleas, J.) ...............................................18, 19

*Trooien v. Imeson*,
  No. 09-cv-507, 2009 WL 1921685 (D. Minn. July 1, 2009) ................................................11

iv

*Ulbrich v. GMAC Mortg., LLC,*
  No. 11-cv-62424, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012) ...........................................17

*United States ex rel. Lawson v. Aegis Therapies, Inc.,*
  No. CV 210-72, 2013 WL 5816501 (S.D. Ga. Oct. 29, 2013) ................................................11

*United States v. Gericare Medical Supply, Inc.,*
  No. 99-366, 2000 WL 33156443 (S.D. Ala. Dec. 11, 2000) ..................................................11

*United States v. Ward,*
  486, F.3d 1212, 1221-22 (11th Cir. 2007) .......................................................................9, 10

*Valdez v. Saxon Mortg. Services, Inc.,*
  No. 2:14-cv-3595, 2014 WL 7968109 (C.D. Cal. Sept. 29, 2014) .........................................15

*Vega v. Ocwen Fin. Corp.,*
  No. 2:14-cv-4408 (C.D. Cal.) ......................................................................................9, 10

*Warth v. Seldin,*
  422 U.S. 490 (1975).............................................................................................................4

*Watts v. Fla. Int'l Univ.,*
  495 F.3d 1289 (11th Cir. 2007) ..........................................................................................4

*Wexner v. First Manhattan Co.,*
  902 F.2d 169 (2d Cir. 1990).................................................................................................6

*White v. Trans Union, L.L.C.,*
  462 F. Supp. 2d 1079 (C.D. Cal. 2006) ..............................................................................12

*WiAV Solutions LLC v. Skyworks Solutions, Inc.,*
  No. 13-cv-6683, 2015 WL 57670 (S.D.N.Y. Jan. 5, 2015) ...................................................18

*Williams v. Saxon Mortgage Servs., Inc.,*
  No. 13-cv-10817, 2014 WL 765055 (E.D. Mich. Feb. 26, 2014).....................................15, 16

*Williams v. Wells Fargo Bank N.A.,*
  No. 11-cv-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) .....................................16, 17

*Wynkoop v. Wells Fargo Home Mortg., Inc.,*
  No. 11-cv-60392, 2011 WL 2078005 (S.D. Fla. May 26, 2011).......................................18, 20

*Young v. Wells Fargo & Company ("Huyer I"),*
  671 F. Supp. 2d 1006 (S.D. Iowa 2009) ....................................................................... passim

STATUTES

18 U.S.C. § 1961...................................................................................................................1

Florida Statutes Sec. 895.03(3) ......................................................................................................9

**OTHER AUTHORITIES**

FED. R. CIV. P. 8(a) and 9(b) ...............................................................................................6, 11

FED. R. CIV. P. 12(b)(6) ......................................................................................................5, 17

I.    **INTRODUCTION**

This case is about Nationstar Mortgage LLC ("Nationstar") and its affiliate Solutionstar's (together, "Defendants") scheme to exact improper, unwarranted and unreasonable property inspection charges from Plaintiffs and other vulnerable borrowers who have fallen into arrears on their mortgages.  As part of this scheme, Nationstar ordered property inspections through Solutionstar and manipulated the frequency and price of these inspections to generate profits for Defendants in the form of kickbacks and other delinquency-related servicing fees.  These charges placed Plaintiffs and other borrowers whose mortgages were serviced by Nationstar into difficult financial straits, putting their homes in jeopardy and forcing them into loan modifications and, in some cases, foreclosure. Plaintiffs now seek return of these inflated, bogus inspection charges.

In their motion to dismiss, Defendants argue that this action is an "ordinary contract dispute" from which Plaintiffs "attempt to gin up a grand RICO conspiracy…."  Def. Br. at 1-2. But Defendants' characterization is rebutted by a similar suit in the Southern District of Iowa concerning Wells Fargo's loan servicing practices that were nearly identical to Defendants' improper practices here.  Indeed, Defendants have failed to cite or distinguish the rulings in *Huyer v. Wells Fargo & Company*, No. 4:08-cv-507 (S.D. Iowa),[1] a case where, in October 2013, the district court certified a nationwide class asserting claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* concerning Wells Fargo's scheme to exact property inspection charges and late fees from borrowers.  *See Huyer II*, 295 F.R.D. 332 (2013) (certifying class).  Plaintiffs' Complaint asserts substantially similar

---

[1] This case was originally captioned *Young v. Wells Fargo & Co.* but subsequent rulings used the caption *Huyer v. Wells Fargo & Co.*  Plaintiffs will refer to the case as "*Huyer.*"  The motion to dismiss opinion, 671 F. Supp. 2d 1006 (S.D. Iowa 2009), is referred to herein as "*Huyer I*" and the class certification decision, 295 F.R.D. 332 (S.D. Iowa 2013), is referred to as "*Huyer II.*"

allegations as in *Huyer*.  Plaintiffs' well-pleaded allegations are more than sufficient to state a claim for violation of the federal and state RICO statutes.[2]  Defendants' arguments concerning the breach of contract and unjust enrichment claims do not fare better.  Indeed, each has either been rejected repeatedly, requires adoption of a mischaracterization of Plaintiffs' Complaint, or both.  For these reasons and those set forth below, Defendants' motion should be denied.

## II.    BACKGROUND

### A.    Plaintiffs' Relationship and Experience with Defendants

Plaintiffs are two couples who have mortgage loans serviced by Defendant Nationstar. Trevor and Staci Hill executed a mortgage on their primary residence in Ft. Lauderdale, Florida on May 15, 2007.  Compl. ¶ 10.  Subsequent to the execution of their mortgage, the mortgage became owned and/or guaranteed by Federal National Mortgage Association ("Fannie Mae") and the servicing rights were transferred to Nationstar.  *Id.*  In approximately October 2011, the Hills became delinquent in their mortgage payments but have continued to live in their home.  *Id.*

Qamarun and Mujahiddin Shaikh executed their mortgage on their primary residence in Miami, Florida on November 2, 2005.  *Id.* ¶ 11.  Subsequent to the execution of their mortgage, the mortgage became owned and/or guaranteed by Fannie Mae and the servicing rights were transferred to Nationstar.  *Id.*  In approximately August 2009, the Shaikhs became delinquent in their mortgage payments but continued to live in their home.  *Id.*

---

[2] The parties have met and conferred and Plaintiffs have agreed to voluntarily dismiss Counts II and IV of the Complaint without prejudice, which alleged that Defendants conspired to violate federal and state RICO.  Plaintiffs do not dismiss their other RICO counts.

Plaintiffs maintained consistent contact with Nationstar and submitted completed loan modification applications[3] to Nationstar in which Plaintiffs verified that they still lived in their homes. *Id.* ¶¶ 10-11.

### B.   Defendants' Scheme to Charge Improper Property Inspections at Inflated Prices

Notwithstanding this consistent contact between Plaintiffs and Nationstar, Nationstar ordered multiple property inspections via Solutionstar more frequently than once every thirty days and assessed $15 charges on Plaintiffs in connection with each inspection. *See id.* ¶ 100-01.[4] These property inspections were not ordered in error. Defendants engaged in a scheme to charge these inspections automatically and without regard to whether conducting an inspection was reasonable or appropriate. *See, e.g., id.* ¶¶ 76-85. To accomplish this scheme, Nationstar monitors its mortgage servicing portfolio using an automated computer system (the "Servicing System"). *Id.* ¶ 78. Defendants have programmed the Servicing System such that, when it determines that a borrower has become delinquent, the Servicing System will automatically order a property inspection and charge the borrower's account for the inspection. *Id.* ¶ 79. The Servicing System generates and sends property inspection work orders automatically to Solutionstar which relays them to a third-party vendor to fulfill. *See id.* ¶ 81. The vendor performs the inspection and uploads the report into the Servicing System. *Id.* ¶ 82. Thereafter, the borrower's account is automatically assessed a charge for the inspection. *Id.*

---

[3] In fact, the Hills were offered a modification in October 2014, which they accepted and began making trial payments. *Id.* ¶ 10.

[4] As Loan Servicer, Defendant is permitted to "make reasonable entries upon and inspections of [Plaintiffs'] Propert[ies]" and to "do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Propert[ies]…." *See* Compl. ¶ 64. The Lender, however, prescribes when such inspection activities are "reasonable or appropriate" and does not require or suggest that inspections occur more than once every 30 days – or at all in the event that the Lender has made "quality right party contact" with the borrower, which occurred in Plaintiffs' cases. *Id.* ¶¶ 50-62.

3

This highly automated scheme (which is common to all borrowers whose loans are serviced by Nationstar) for generating and assessing property inspection fees serves two separate and independent profit motives for Defendants. First, Plaintiffs allege that Solutionstar receives or retains a portion of each property inspection charge. In approximately 2012, Nationstar began ordering property inspections through Solutionstar. *Id.* ¶ 6. Around that time, Nationstar began to increase the amount charged to borrowers in connection with property inspections from $9.15 to $15.00. *Id.* The reason behind that increase was to accommodate Solutionstar's receipt of a portion of the inspection charges. *See, e.g.*, *id.*; *id.* ¶¶ 92-93. Second, Plaintiffs allege that Nationstar benefited by increasing delinquent balances which enabled Nationstar to charge additional delinquent fees such as late fees. *See id.* ¶¶ 7, 18, 41, 133.[5] Neither of these motives is "reasonable or appropriate."

III. **ARGUMENT**

A. **Legal Standard**

A motion to dismiss "is viewed with disfavor and rarely granted." *Hamilton v. Allen-Bradley Co., Inc*., 244 F.3d 819, 823 (11th Cir. 2001). In deciding a motion to dismiss, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Romano v. Motorola, Inc*., No. 07-CIV-60517, 2007 WL 4199781, *1 (S.D. Fla. Nov. 26, 2007). "Factual allegations must be enough to raise a right to relief above the speculative level… on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations and internal quotations omitted); *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1295-96 (11th Cir. 2007). "The threshold is exceedingly low for a complaint to survive a motion

---

[5] Nationstar, as Loan Servicer, is able to assess these fees on borrowers without any fear of loss in the event of default and foreclosure. *See id.* ¶¶ 34-38.

4

to dismiss for failure to state a claim upon which relief can be granted." *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp. LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) (internal citations omitted).

"To survive ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 570. In evaluating plausibility, a court should assume the veracity of the factual allegations in the complaint. *See Iqbal*, 556 U.S. at 679. In the event the complaint proffers "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim, there is a "plausible" ground for recovery and a Rule 12(b)(6) motion to dismiss should be denied. *Twombly,* 550 U.S. at 556.

**B.     Plaintiffs Properly Pleaded Their RICO Claims**

Defendants challenge the sufficiency of Plaintiffs' RICO allegations, arguing that this is an "ordinary contract dispute." Def. Br. at 1-2. But, as the *Huyer* court found in rejecting Wells Fargo's "attempt to construe [the] allegations as a contract dispute," "it is well settled that allegations that a defendant engaged in deceptive business practices can support a claim for breach of contract or fraud, even when the defendant's actions are also contrary to the terms of a valid contract." *Huyer I*, 671 F. Supp. 2d at 1033-34 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526-27 (1983)). "To prevail on a RICO claim under § 1962(c), Plaintiffs must demonstrate '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Id.* at 1026 (quoting *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Defendants contend that Plaintiffs have failed to allege a cognizable

RICO enterprise or pattern of racketeering activity.  Defendants also argue that Plaintiffs lack

standing to sue under RICO.  However, for the same reasons articulated in *Huyer*, among other

pertinent authority set forth below, Defendants' arguments fail.

### 1.    Plaintiffs allege a cognizable RICO enterprise

Defendants argue that Plaintiffs fail to allege a cognizable RICO enterprise because

Plaintiffs have not alleged that Defendants and the third-party property inspection vendors shared

a common purpose and that Plaintiffs have not alleged a distinct RICO entity.[6]  Defendants'

argument relies on a false premise.  Specifically, Defendants argue that Plaintiffs must plead that

---

[6] Defendants also argue that Plaintiffs have not identified the third-party vendors by name
making the alleged enterprise too "amorphous."  Federal courts, however, routinely deny
motions to dismiss RICO allegations concerning loan servicing practices where the third-party
vendors are not named.  *See, e.g., Huyer I*, 671 F. Supp. 2d at 1028; *see also Bias v. Wells Fargo
& Co.*, 942 F. Supp. 2d 915, 923, 936-42 (N.D. Cal. 2013) (finding RICO allegations sufficient
where plaintiffs alleged that defendants "formed an enterprise with their respective subsidiaries,
affiliates, and 'property inspection' vendors"); *In re Countrywide Fin. Corp. Mortg. Mktg &
Sales Prac. Litig.*, 601 F. Supp. 2d 1201, 1212-13 (S.D. Cal. 2009) (finding sufficiently pleaded
RICO enterprise of lender, lender's subsidiary loan servicers, and mortgage brokers, some of
which were not named as defendants, that had contracts with lender).  Regardless, the identity of
the third-party vendors is not an essential element to pleading a RICO enterprise.  Rather,
Plaintiffs' pleading is held to the standard of FED. R. CIV. P. 8(a) and 9(b) and, under those
standards, pleadings must supply defendants with enough information so that they can "prepare
an adequate answer from the allegations."  *Knight v. E.F. Hutton and Co., Inc.*, 750 F. Supp.
1109, 1115 (M.D. Fla. 1990) (citations omitted).  Moreover, it is well established that even the
heightened pleading standards of Rule 9(b) are relaxed when a plaintiff is not in a position to
know specific facts until after discovery and the opposing party has particular knowledge of the
facts.  *See American General Life and Acc. Ins. Co. v. Ward*, 509 F. Supp. 2d 1324, 1336 (N.D.
Ga. 2007) ("Rule 9(b) may be applied less stringently when "specific 'factual information [about
the fraud] is peculiarly within [the opposing party's] knowledge or control.'") (quoting *Hill v.
Morehouse Med. Assoc., Inc.*, 2003 WL 22019936 *3 (11th Cir. 2003)); *Perryman v. Litton Loan
Servicing, LP*, No. 14-cv-2261, 2014 WL 4954674, at *16 (N.D. Cal. Oct. 1, 2014) ("While
Plaintiff does not know, and could not reasonably be expected to know, the exact names of every
entity involved in this arrangement, the complaint satisfied Rule 9(b)."); *Wexner v. First
Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) ("Despite the generally rigid requirement that
fraud be pleaded with particularity, allegations may be based on information and belief when
facts are peculiarly within the opposing party's knowledge.").  Thus, Plaintiffs' Complaint should
not be dismissed on that basis.  Furthermore, Plaintiffs note that since the filing of the
Complaint, Defendants have informed Plaintiffs of the identity of the vendors that performed
inspections on their properties and thus, Plaintiffs can now plead those identities – as well as
John Doe vendors – if the Court deems it necessary in an Amended Complaint.

Defendants and the third-party property inspection vendors "worked together … for a common purpose of **fraud**." Def. Br. at 10 (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)) (emphasis added). The cited authority, however, does not stand for that contention. Rather, *Boyle* only requires that the members of the enterprise share a "common purpose of engaging in **a course of conduct**." *Boyle*, 556 U.S. at 946 (emphasis added). The distinction is important for the "course of conduct" need not be fraudulent or illegal. This same argument that the RICO enterprise must itself engage in fraud was made by Wells Fargo in *Huyer* and rejected by the court. The court ruled:

> [T]he Court disagrees with Wells Fargo's suggestion that RICO liability only attaches to activities directly performed by the RICO enterprise… The plain language of the statute sets forth that liability under § 1962(c) arises from the actions of an individual, not the actions of the RICO enterprise. Of course, the individual defendant must have an association with the RICO enterprise, and also conduct or participate in the affairs of the RICO enterprise through a pattern of racketeering activity to be liable under RICO, but the statute does not require that the RICO enterprise be the primary actor committing the racketeering activities.

*Huyer I,* 671 F. Supp. 2d at 1027 (citations omitted); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164-65 (2001) ("RICO protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful … activity is committed."); *Reynolds v. Condon*, 908 F. Supp. 1494, 1510 (N.D. Iowa 1995) ("[T]he [RICO] enterprise need only have a common or shared purpose which may be legal or otherwise….").[7]

---

[7] Furthermore, "Congress clearly intended RICO liability to extend to situations where one entity directs the formation of a RICO enterprise and then makes use of the association to further a pattern of unlawful activity, even where portions of the unlawful activity do not issue directly from the RICO enterprise." *Huyer I*, 671 F. Supp. 2d at 1028 (concluding that the plaintiffs had sufficiently pleaded an enterprise).

Plaintiffs here have alleged the Enterprise to be "an ongoing organization that engages in interstate commerce by ordering and conducting inspections throughout the United States and assessing fees in association therewith…."  Compl. ¶ 90.  The members of the Enterprise function as a continuing unit and share the common purpose of maximizing their profits by charging Plaintiffs and the Classes for property inspection fees.[8]  *Id.* ¶ 91.  Plaintiffs allege that Defendants conducted the affairs of the Enterprise through a pattern of racketeering activity.[9] *See, e.g.*, *id.* ¶ 93 ("Defendants used the Enterprise to effectuate this scheme"); *id.* ¶ 96 ("Defendants control, operate and direct the affairs of the Enterprise by, among other things: (a) programming the Servicing System to automatically generate work orders for improper property inspections that instruct vendors to conduct the inspections; (b) dispatching vendors to inspect the property; (c) arranging for vendors to upload completed inspection reports to the Servicing System; (d) automatically assessing fees to borrowers for property inspections on monthly mortgage statements; and (e) collecting payments from borrowers that include inspection fees and then paying vendors while retaining portions of the payments for Defendants as a kickback.").  Thus, Plaintiffs have met their pleading burden and Defendants' motion should be denied.[10]

---

[8]  Elsewhere, the Complaint alleges that "[t]he Enterprise shared a common function of performing property inspections on delinquent borrowers."  Compl., Dkt. No. 1 at ¶¶ 131, 146.

[9]  Defendants' argument that Plaintiffs failed to plead the Enterprise as distinct from its participants is dependent upon the Court first finding that the third-party property inspection vendors are not members of the Enterprise.  However, as noted above, because the third-party property inspection vendors are members of the Enterprise, Defendants' contentions concerning distinctiveness are inapposite.

[10]  Defendants also argue that the pleaded Enterprise is a "hub-and-spoke" conspiracy "with Nationstar and its affiliate Solutionstar as the hub and each vendor as a separate spoke."  Def. Br. at 10.  Defendants posit that "without some sort of 'rim' linking the spokes there is no coming together of a group sufficient to make out a claimed RICO enterprise."  *Id.*  This argument suffers from the same false premise as the *Boyle* argument.  Specifically, it depends on the RICO allegations arising out of a conspiracy in which all members of the Enterprise participated.

### 2.    Plaintiffs adequately allege that Defendants engaged in a pattern of racketeering activity

Defendants next contend that Plaintiffs' allegations of mail and wire fraud are deficient and cannot form the basis for a pattern of racketeering activity.  "Aside from the means by which a fraud is effectuated, the elements of mail fraud and wire fraud are identical.  Both offenses require that a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or 'causes' the use of the mails or wires for the purpose of executing the scheme or artifice."  *United States v. Ward*, 486, F.3d 1212, 1221-22 (11th Cir. 2007).

Plaintiffs allege that Defendants participated in a scheme to defraud Plaintiffs and used both the wires and mails to execute that scheme.  The court's analysis in *Huyer* is instructive.  The plaintiffs pleaded "a systematic course of conduct to defraud mortgage borrowers" where the loan servicer managed its servicing through "general computer software packages."  *Huyer I*, 671 F. Supp. 2d at 1034.  The plaintiffs further described "the process by which the [electronic servicing system] automatically generates property inspection requests, sends them to property inspection vendors, allows the property inspection vendor to upload its report, and charges a property inspection fee to the mortgagor's mortgage account."  *Id.*  The *Huyer* plaintiffs "refer[red] to contract language that they assert restricts those fees to those reasonably necessary to protect the interest of the lender" and "assert that the manner in which [the loan servicer] ordered property inspections was not reasonable."[11]  *Id.* at 1034-35.  In connection with that

---

Plaintiffs' claims under Section 1962(c) and Florida Statutes Sec. 895.03(3) assert that Defendants conducted the affairs of the Enterprise through a pattern of racketeering activity, not that Defendants and vendors engaged in a conspiracy.

[11] Following the *Huyer* decision, another court considered a case alleging that Ocwen Loan Servicing LLC engaged in a similar scheme.  *See Vega v. Ocwen Fin. Corp.*, No. 2:14-cv-4408 (C.D. Cal.).  Initially, the court denied the motion to dismiss, following the reasoning in *Huyer*.  *See Vega*, 2014 U.S. Dist. LEXIS 166922 (C.D. Cal. Dec. 1, 2014).  However, the *Vega* court

scheme, the *Huyer* plaintiffs asserted that their loan servicer "repeatedly sent [p]laintiffs materially false and misleading agreements, contracts and monthly mortgage statements by mail and wire … [including] specific information regarding multiple monthly statements that charged Plaintiffs the allegedly excessive fees, including amounts and dates." *Id.* at 1035. The court found that "the facts constituting the fraudulent scheme [were] plead[ed] with sufficient particularity with respect to the RICO claim." *Id.* at 1036.

Here, Plaintiffs have asserted substantially similar allegations to those in *Huyer*. The Complaint alleges that "Nationstar monitors its mortgage servicing portfolio using an automated computer system…." Compl. ¶ 78. "If a borrower is late making a payment, Nationstar's Servicing System will automatically order a property inspection and charge the borrower's account for the inspection…." *Id.* ¶ 79. "The property inspection work orders are automatically sent, via Solutionstar, to either a third-party vendor or affiliate of Nationstar to fulfill." *Id.* ¶ 81. "Once the vendor/affiliate receives the computer-generated property inspection work order, the inspection is performed and the cost is automatically charged to the borrower's account. The

---

later withdrew its opinion on its own motion. *See Vega*, Dkt. No. 61. In the subsequent order granting the motion to dismiss, the court distinguished *Vega* from *Huyer*, stating "the mortgage agreement in *Huyer* … is not the same as Vega's mortgage agreement. In [*Huyer*], the court explained that 'Plaintiffs refer to contract language that they assert restricts fees to those reasonably necessary to protect the interest of the lender." *Vega*, Dkt. No. 62 at 9 (citing *Huyer I*, 671 F. Supp. 2d 1006, 1034-35 (S.D. Iowa 2009). Upon review of the *Huyer* mortgage contract and the language quoted by the *Vega* court, however, the *Vega* court's assertion is erroneous because the contracts are substantially identical (and substantially identical to Plaintiffs' contracts here). *Compare Huyer*, 4:08-cv-507, Dkt. Nos. 52-6, 52-7, 52-8, with *Vega*, Dkt. No. 62 at 5 ("Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property…."). The *Vega* court's confusion appears to stem from the plaintiff's misquotation of their own mortgage and subsequent failure to present the court with the relevant agreements. *Vega*, Dkt. No. 62 at 5 ("The Court eventually figured out why Vega claimed a non-existent term was in her mortgage agreement—Vega's counsel decided to reuse a previously filed complaint."). Thus, although the court dismissed the complaint in *Vega*, the court did not dispute the findings and reasoning of *Huyer*. For these reasons, the Court should follow *Huyer* and not *Vega* because *Vega* relies on an erroneous factual premise and was, thus, incorrectly decided and/or based on erroneous information provided by the *Vega* plaintiff.

property inspection report is uploaded to the Servicing System." *Id.* ¶ 82. Plaintiffs' mortgage contracts also contained identical language concerning property inspections as the *Huyer* plaintiffs, restricting the circumstances under which Defendants could order and/or charge borrowers for property inspections. Defendants then used the mails to send mortgage statements containing the charges imposed by this scheme to defraud. *Id.* ¶¶ 98-101.[12]

These allegations – and the others in the Complaint – demonstrate both the use of the wires and mails for purposes of executing Defendants' scheme to defraud and more than meet Plaintiffs' burden under FED. R. CIV. P. 9(b).[13]  *See Huyer I*, 671 F. Supp. 2d at 1034-36.[14] Unable to distinguish the directly on point discussion in *Huyer*, Defendants simply ignore the case. Instead, Defendants attempt to minimize Plaintiffs' allegations by recasting the scheme to

---

[12] In fact, Plaintiffs allegations go further than *Huyer*. Plaintiffs have also plausibly alleged a kickback scheme pursuant to which Solutionstar receives a portion of the charge to mortgage borrowers in return for utilizing the third-party inspection vendors. Although the allegations are sufficient under *Huyer* without the kickback scheme, the kickback scheme further increases the strength of an inference of scienter in Defendants' scheme.

[13] Defendants assert that Plaintiffs have not alleged wire fraud. *See* Def. Br. at 15 n.8. Defendants, however, ignore the specific and detailed allegations of the operation of Defendants' servicing system and the electronic exchange of information including both property inspection orders and property inspection results. *See, e.g.*, Compl. ¶ 94 ("Nationstar's Servicing System is a common communication network by which Defendants and the Enterprise as a whole communicate and share information."). Allegations "of a fraudulent scheme involving a course of conduct for an extended period of time, or a series of transactions, need not recite the fact of each transaction in detail." *Trooien v. Imeson*, No. 09-507, 2009 WL 1921685, at *2 (D. Minn. July 1, 2009) (citing *Bale v. Dean Witter Reynolds, Inc.*, 627 F. Supp. 650, 652 (D. Minn. 1986)). Thus, Defendants' arguments concerning Plaintiffs' wire fraud claims fail.

[14] Defendants attempt to confine Plaintiffs' allegations to the "bare assertion that by issuing monthly statements Nationstar represented something." Def's Mot., Dkt. No. 13, at 16 (citations omitted). Plaintiffs' allegations are not so limited. Plaintiffs' detailed allegations easily meet the pleading standard. *See United States ex rel. Lawson v. Aegis Therapies, Inc.*, No. CV 210-72, 2013 WL 5816501, at *3 (S.D. Ga. Oct. 29, 2013) (stating that plaintiffs alleging fraud "must provide the defendant with 'enough information to formulate a defense to the charges.'") (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n. 24 (11th Cir. 2002)); *see also United States v. Gericare Medical Supply, Inc.*, 2000 WL 33156443, at *5 (S.D. Ala. Dec. 11, 2000). ("Rule 9(b) challenges must be gauged in light of the purposes the rule is designed to fulfill and not simply by an abstract fastidiousness.").

defraud as the mere act of sending mortgage statements with inflated and/or bogus charges on them.  In fact, Plaintiffs pleaded a much broader scheme; the mailing of mortgage statements was merely one part.

### 3.        Plaintiffs sufficiently allege RICO injury

Defendants argue that Plaintiffs have failed to adequately plead injury in connection with their RICO claims.  To sufficiently plead injury under RICO, a plaintiff must allege "injury to business or property."  *See, e.g.*, *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).  "In the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money....  Money, of course, is a form of property."  *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 936 (N.D. Cal. 2013).

Defendant appears to argue that Plaintiffs have no RICO injury unless or until Plaintiffs "pay" for a charge.  Defendants cite no authority for this proposition.  Ample authority, on the other hand, supports the contrary contention; that a charge, due and outstanding, constitutes an actionable injury.  *See, e.g.*, *Huyer II*, 295 F.R.D. at 341 (finding that the plaintiff borrowers suffered injury "regardless of whether they have actually paid some portion of the assessed property inspection fees or have merely been assessed, but are yet to pay, such fees"); *Aho v. Americredit Fin. Servs.*, 2011 LEXIS 80426, at *32 (S.D. Cal. July 25, 2011) (holding that "[b]eing subject to an invalid debt" constitutes injury); *White v. Trans Union, L.L.C.*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006) (holding that "[t]he perpetration of [c]redit [r]eports containing inaccurate ... information regarding 'due and owing' debts is a sufficient injury to grant [p]laintiffs standing").

Moreover, contrary to Defendants' argument, the Shaikh Plaintiffs allege that "Defendants assessed $995 worth of property inspections during the year-to-date," and the Hill

Plaintiffs allege that "Defendants assessed more than $278 worth of property inspections during the year-to-date, as evidenced by their respective Mortgage Loan Statements."  Compl., ¶¶ 100-01.  These allegations directly contravene Defendants' suggestion that Plaintiffs have not alleged specific economic injuries as a result of Defendants' conduct.

### C.   Plaintiffs Properly Allege Breach of Contract

Plaintiffs also have stated a claim for breach of contract.  Under Florida law, "a breach of contract claim has three essential elements:  '(1) a valid contract; (2) a material breach; and (3) damages.'"  *Mahdavieh v. SunTurst Mortg., Inc.*, No. 13-cv-62801, 2014 WL 1365425, at *3 (S.D. Fla. Apr. 7, 2014) (quoting *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003)).  Plaintiffs allege that Nationstar breached their mortgage contracts by charging property inspection fees that were not permitted under the terms of the mortgage and by charging Plaintiffs for amounts retained by Nationstar's affiliate, Solutionstar.  These charges caused Plaintiffs' damage in the amount of the unnecessary charges or, alternatively, in the amount of Solutionstar's retainage.

Defendants first argue that the contract language "unequivocally permit[s] the lender to conduct property inspections and charge them to the borrower."   Def. Br. at 3 (quoting *Majchrowski v. Norwest Mortg., Inc.*, 6 F. Supp. 2d 946, 964-65 (N.D. Ill. 1998) (internal quotations omitted).  Defendant cannot rely on these cases, however, because Defendant is not the "Lender" discussed in the contract.  Rather, Defendant is the "Loan Servicer."[15]  *See, e.g.*,

---

[15] Plaintiffs' Complaint describes Nationstar's role as "Loan Servicer" in detail.  *See* Compl. ¶¶ 20-25 (describing the mortgage industry and the nature of servicing rights); *id.* ¶¶ 26-33 (describing how mortgage transactions are structured and how servicing rights are split from the rest of the mortgage); *id.* ¶¶ 34-38 (describing the loan servicer's interest in the underlying mortgage); *id.* ¶¶ 39 to 43 (describing how loan servicers earn income from mortgages); *id.* ¶¶ 50-62 (describing loan servicing obligations prescribed by Plaintiffs' Lender, Fannie Mae); *id.* ¶¶ 63-65 (describing what Plaintiffs' mortgage contracts permit the loan servicer to do in terms of property inspections).

*Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 263 (N.D.N.Y. 2013) (denying the motion to dismiss breach of contract claims and finding that the Loan Servicer is not the Lender described in Fannie Mae mortgage contracts and that Loan Servicers are not explicitly granted all rights of the Lender).[16]   Even if Defendants are correct concerning whether Nationstar could order inspections at will above and beyond what the Lender actually requires to protect its own interest – and they are wrong – their argument does not address Plaintiffs' well-pleaded kickback allegations.   Indeed, Plaintiffs have pleaded a kickback scheme whereby Defendants ordered inspections to profit from kickbacks.   Motions to dismiss in similar situations are routinely denied. *See, e.g.*, *Mahdavieh*, 2014 WL 1365425, at *3 (S.D. Fla. Apr. 7, 2014) (denying motion to dismiss because even though the mortgage gave the loan servicer the discretion to force-place insurance, "it did not necessarily permit [the servicer] to do so in the manner alleged by Plaintiffs" including the receipt of kickbacks).

Next, Defendants contend that Plaintiffs' breach of contract claim should be dismissed because Plaintiffs failed to allege damages, as "nowhere in their Complaint do Homeowners allege that they have actually paid any of these fees." Def. Br. at 19.   Defendants offer no legal authority to support their position that to sufficiently plead a breach of contract claim, Plaintiffs must allege that they have paid the improper fees, not just incurred the charges.

As in the context of RICO, federal courts have consistently rejected the distinction between improper fees *charged* and improper fees *charged and paid*. *See, e.g., Newsome v. BAC Home Loans Servicing, LP*, No. 11-cv-423, 2011 WL 2462315, at *2 (N.D. Cal. June 21, 2011) (denying motion to dismiss breach of contract claim for inadequate allegations of damages where

---

[16] *See also In re: Ocwen Loan Servicing Litig.*, 491 F.3d 638, 641 (7th Cir. 2007) ("If the firm doing the servicing … exceeds its rights under the transfer agreements, the mortgagor's recourse is against that firm rather than against the original mortgagee or current holder of the mortgage.").

plaintiffs alleged they incurred "late fees and other charges as a direct result of [d]efendant's alleged breach" despite defendant's argument that court "should disregard these allegations because [p]laintiffs have not alleged that they actually paid these fees"); *Huyer*, 295 F.R.D. at 341 (holding that plaintiffs sufficiently alleged injury-in-fact "regardless of whether they have actually paid some portion of the assessed property inspection fees or have merely been assessed, but are yet to pay, such fees."); *Valdez v. Saxon Mortg. Services, Inc.*, 2014 WL 7968109, at *9 (C.D. Cal. Sept. 29, 2014) (finding that plaintiff adequately alleged injury despite never paying charges assessed by mortgage servicer).

Plaintiffs have alleged that they sustained damages in the form of property inspection fees incurred as a result of Defendants' conduct, and that through such conduct Defendants have breached Plaintiffs' mortgage contracts.  Compl. ¶¶ 133, 164-183.  Plaintiffs have also alleged that as a result of Defendants' unlawful conduct, they sustained harm in the form of inflated amounts owed on their mortgages, late fees, and negative effects on their credit-worthiness.  *Id.* ¶¶ 133, 148, 161.  Federal courts have found similar allegations of damages in analogous cases sufficiently pleaded.  *See DuMont v. Litton Loan Servicing, LP*, No. 12-cv-2677, 2015 WL 1061138, at *6 (S.D.N.Y. Mar. 11, 2015) (holding that plaintiffs sufficiently alleged damages "in the form of improper fees, increased interest, a longer loan payoff time, high principal balance and damage to their credit."); *Fletcher v. OneWest Bank, FSB*, 798 F. Supp. 2d 925, 932 (N.D. Ill. 2011) (denying motion to dismiss when plaintiff alleged "she suffered damages in the form of fees, charges, accrued interest, and damage to her credit reports"); *Williams v. Saxon Mortgage Servs., Inc.*, No. 13-cv-10817, 2014 WL 765055, at *16 (E.D. Mich. Feb. 26, 2014) (denying motion to dismiss when plaintiffs alleged damages "in the form of accrued fees and charges and

damage to their credit reports"). Defendants' attempt to undermine Plaintiffs' breach of contract claim by refuting that damages were properly alleged therefore fails.

### D.   Plaintiffs State a Claim for Unjust Enrichment

Defendants argue that the unjust enrichment claim fails because Plaintiffs did not allege that they conferred a direct benefit on Solutionstar. In so doing, Defendants improperly conflate "direct benefit" with "direct contact." *See Romano v. Motorola, Inv.*, No. 07-cv-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) ("Defendant erroneously equates direct contact with direct benefit."). Courts in this District routinely reject this argument in similar contexts. For example, in *Williams v. Wells Fargo Bank N.A.*, No. 11-cv-21233, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011), a defendant loan servicer ordered force-placed insurance from a third-party insurance carrier which, in turn, paid a kickback to the loan servicer's captive affiliate. Like Solutionstar, the captive affiliate of the loan servicer in *Williams* argued that the plaintiffs failed "to adequately allege that [the Wells Fargo affiliate] received any money *directly* from the Plaintiffs … or that [same defendant] had any relationship whatsoever with the Plaintiffs." *Id.* at *8 (citations omitted) (emphasis in original). The court rejected the argument, reasoning:

> Plaintiffs allege [the third party insurer and Wells Fargo affiliate defendants] directly benefitted from their wrongful conduct related to the force-placed insurance arrangement. In particular, Plaintiffs claim [the third party insurer and Wells Fargo affiliate defendants] received kickbacks and/or commissions, which were taken directly from the insurance premiums paid by Plaintiffs. Therefore, although there was no direct contact between them and Plaintiffs, by paying the allegedly excessive premiums, Plaintiffs directly conferred a benefit on [the third party insurer and Wells Fargo affiliate defendants].

*Id.* at *9. Like the affiliate in *Williams*, Solutionstar directly benefitted from Defendants' scheme to exact the unnecessary and inflated property inspection fees. Plaintiffs do not dispute that Nationstar was the entity with which they maintained contact – indeed the Complaint delineates instances when Plaintiffs contacted Defendants in a futile attempt to notify Defendants

of their continued residence in their homes and ascertain an explanation of the barrage of property inspection fees.  As this Court has made clear, however, it is not direct contact that an unjust enrichment claim requires, but rather direct benefit.

Moreover, this Court has held that whether defendants received a direct benefit from plaintiffs is a "factual question that cannot be resolved on a motion to dismiss."  *Ulbrich v. GMAC Mortg., LLC*, 2012 WL 3516499, at *2 (S.D. Fla. Aug. 15, 2012) (citing *Abels v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009)); *Williams*, 2011 WL 4368980, at *10 ("Whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss.") (citing *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009)).  Given the standard applicable at this stage of the litigation, as well as the detailed extent to which Plaintiffs have described the fees unlawfully exacted by Defendants, Plaintiffs adequately pleaded their unjust enrichment claims.

    **E.**    **Plaintiffs Were Not Obligated to Provide Pre-Suit Notice to Defendants**

        **1.**    **The issue of pre-suit notice cannot be resolved on the pleadings**

Dismissal for failure to plead compliance with a notice-and-cure provision is inappropriate for resolution by a Rule 12(b)(6) motion because it requires a finding of fact outside the four corners of the Complaint, namely that Defendants were not afforded notice and an opportunity to cure.  *See, e.g., Delmar Financial Co. v. ISGN Corp.*, No. 4:14-cv-147, 2014 WL 3734277, at *3 (E.D. Mo. July 28, 2014) (finding that even though "plaintiff's complaint does not allege that it provided defendant with an opportunity to cure … plaintiff's failure to specifically plead these facts is not fatal to its breach of contract claim at this stage of litigation).  Defendants do not support their argument with authority demonstrating that a plaintiff must

plead compliance with a notice-and-cure provision to survive a motion to dismiss.  Defendants'

contention that no notice was given is a contention of fact inappropriate for resolution here.[17]

### 2.    The pre-suit notice provision does not apply to claims that do not arise from the mortgage contract

A notice-and-cure provision can only function as a precondition to suit when claims arise

from actions taken pursuant to the contract or agreement at issue.  *See St. Breux v. U.S. Bank,*

*Nat. Ass'n*, 919 F. Supp. 2d 1371, 1375 (S. D. Fla. 2013) (Dimitrouleas, J.) ("[T]he notice and

cure provision of the mortgage can act as a bar only if it applies by its terms to this action.").

Contrary to Defendants' assertion that "[Plaintiffs'] claims are entirely based on their mortgage

contracts," Def. Br. at 7, Plaintiffs' RICO and unjust enrichment claims arise from separate

statutes and duties, not the mortgage contract.  Therefore, Defendants' argument in favor of

dismissing all of Plaintiffs' claims is unavailing.

Courts addressing pre-suit notice provisions like the one in Plaintiffs' mortgage contracts

have held that pre-suit notice requirements in contracts do not extend to other causes of action

not based on the contract.  *See St. Breux,* 919 F. Supp. at 1375 (finding notice-and-cure provision

inapplicable when plaintiff's claim was based in statute); *Wynkoop v. Wells Fargo Home Mortg.,*

*Inc.*, No. 11-cv-60392, 2011 WL 2078005, at *2 (S.D. Fla. May 26, 2011) (finding failure to

---

[17] Even if pre-suit notice needed to be pleaded in the Complaint by virtue of the fact that it is a condition precedent to action, courts have held that it is only where a contract "contains an unambiguous condition precedent" that plaintiffs must "plead compliance therewith to state a breach of contract claim."  *Mahoney v. Sony Music Entertainment*, No. 12-cv-5045, 2013 WL 491526, at *6 (S.D.N.Y. Feb. 11, 2013).  The notion that the provision applied to Defendants is erroneous, or at least ambiguous, as Defendants are not the Lenders.  This issue, therefore, is a serious point of contention about the facts concerning the identity of the parties bound by the notice-and-cure provision, and thus it cannot form the basis for dismissal at this stage of the litigation.  *See WiAV Solutions LLC v. Skyworks Solutions, Inc.*, No. 13-cv-6683, 2015 WL 57670, at *3 (S.D.N.Y. Jan. 5, 2015) ("While [Defendant] contends that a factual dispute does not exist because the contract language is materially unambiguous regarding notice, … at this procedural stage [Defendant] simply cannot show as a matter of law that [Plaintiff] failed to comply with the notice-and-cure provision and that this bars the complaint entirely. The parties' dispute is indisputably factual.").

provide pre-suit notice did not preclude negligence claim because "Defendant's duty does not arise from the Mortgage itself, but from Defendant's status as a mortgage servicer who accepts Plaintiff's escrow payments."); *Orser v. Select Portfolio Servicing, Inc.*, No. 05-c-1507, 2005 U.S. Dist. LEXIS 39737, at *10 (W.D. Wash. Dec. 20, 2005) (rejecting argument that unjust enrichment claim was barred by contractual relationship because the "matter at the center of Plaintiff's claim for unjust enrichment is Defendant's collection of the $50.00 Payoff Statement Fee, whereas the matter of the acknowledged contract is the agreement between a borrower and a lender to secure a promissory note with the deed of trust relating to a piece of real property.").

In *St. Breux*, the plaintiff brought suit under the Truth in Lending Act ("TILA") for allegedly deficient disclosures in a mortgage agreement. *See St. Breux*, 919 F. Supp. 2d at 1376-77. Even though the plaintiff had not complied with a notice-and-cure provision for claims "arising from" the other party's actions pursuant to the contract, this Court did not dismiss the suit. Because the TILA violation provided the basis for the claim, rather than the mortgage agreement itself, this Court found that the provision did not apply. *See id.* Likewise, in the present case, Plaintiffs' unjust enrichment and RICO claims do not arise from the mortgage contract, and thus the notice-and-cure provision in the mortgage cannot bar these claims.

### 3.   The pre-suit notice provision does not apply to suits against Defendants, neither of which are the "Lender"

Regardless of how Defendants argue the notice-and-cure provision functions, they cannot and do not argue that they are covered by the provision, as neither Nationstar nor Solutionstar is the "Lender" to which the mortgage contract refers. "The notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer." *Schmidt v. Wells Fargo Home Mortg.*, No. 3:11-cv-59, 2011 WL 1597658, at *3 (E.D. Va. April 26, 2011) (holding that the notice-and-cure provision in the deeds of trust did not obligate the

plaintiffs to provide notice to loan servicers in accordance with the provision); *Wynkoop v. Wells Fargo Home Mortg., Inc.*, No. 11-cv-60392, 2011 WL 2078005, at *4 (S.D. Fla. May 26, 2011) (drawing distinction between mortgage servicer and lender in dismissing defendant's comparison of relationship between "bank and borrower" to relationship between loan servicer and borrower) (citation omitted); *Patrick v. Teays Valley Trustees, LLC*, No. 3:12-cv-39, 2012 WL 5993163, at *9 (N.D.W.Va. Nov. 30, 2012):  (the defendant mortgage servicer was not a party to the deed of trust and thus plaintiffs were not obligated to comply with the notice-and-cure provision).

The cases Defendants cite to support their argument do not examine the applicability of pre-suit notice requirement in mortgage contracts to loan servicers.  *See* Def. Br. at 6 (citing *Johnson v. Countrywide Home Loans, Inc.*, No. 1:10-cv-1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010); *Niyaz v. Bank of Am.*, No. 1:10-cv-796, 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011)).  Indeed, the court in *Schmidt* explicitly distinguished *Johnson* and *Niyaz* on this ground and held "[t]he notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer."  *Schmidt*, 2011 WL 1597658, at *3.  Thus, the pre-suit notice provision in Plaintiffs mortgage contracts cannot warrant dismissal of this case even if it were required to be pleaded and did apply to Plaintiffs' non-contractual claims.

## IV.    <u>CONCLUSION</u>

Based upon all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated:  April 2, 2015

/s/ Yechezkel Rodal
Yechezkel Rodal
LOAN LAWYERS LLC
2150 S. Andrews Avenue, 2nd Floor
Ft. Lauderdale, FL 33316
Tel: (954) 523-4357

Shanon J. Carson
Patrick F. Madden
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604

*Attorneys for Plaintiffs*

21