UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60106-CV-DIMITROULEAS/SNOW

TREVOR HILL, STACI HILL,
QAMARUN M. SHAIKH AND
MUJAHIDDIN SHAIKH, individually and
on behalf of all others similarly situated,

        Plaintiffs,

    v.

NATIONSTAR MORTGAGE LLC and
SOLUTIONSTAR,

        Defendants.

**MOTION TO DISMISS**
**<u>FIRST AMENDED COMPLAINT</u>**

Five months ago, the Court dismissed this case. Order of Dismissal Without Prejudice (Dkt. 24) ("Order").[1]  As the Court recalls, the suit arises from claims by plaintiffs, Trevor and Staci Hill (the "Hills") and Qamarun and Mujahiddin Shaikh (the "Shaikhs" and together with the Hills, "Homeowners"), that property inspection fees charged to their home mortgage loan accounts by the loan servicer, defendant Nationstar Mortgage LLC ("Nationstar"), were not permitted under their mortgage contracts because those fees were too high, were charged too frequently, and were charged unnecessarily. The dismissal rested on findings that Homeowners had failed to allege they had provided contractually-required pre-suit notice and because the complaint failed to state a claim.

Following that dismissal, and an unsuccessful motion for reconsideration, plaintiffs, amended their complaint.  First Amended Complaint (Dkt. 29) ("FAC").  The amendments are very modest substantively. Indeed, many of the differences between the original and amended complaints are deletions—primarily, of admissions that the parties' contracts govern the charging of the challenged property inspection fees and of numerous causes of action.  In the end, as discussed below, the FAC still does not show that plaintiffs gave valid pre-suit notice and it still does not state a claim.  The case should be dismissed again, though now with prejudice.

As a threshold matter, the case is again subject to dismissal due to the notice-and-cure provision of the mortgage contracts.  While the FAC (unlike the original complaint) asserts that Homeowners gave pre-suit notice, the pre-suit letters they point to do not meet the contractual requirement.  Those letters were mere requests for information that fell far short of warning of an impending racketeering class action attacking Defendants' business relationships and  methods of servicing loans.  Homeowners' failure to provide that pre-suit warning is fatal to their lawsuit.

---

[1]  The Order is reproduced at *Hill v. Nationstar Mortgage LLC*, 2015 WL 4478061 (S.D. Fla. July 6, 2015).  This Motion refers to the Order in its slip opinion version.

Independently, dismissal is required because the FAC fails to state a claim in attempting to reallege the sole remaining cause of action, under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").   The Court cited three specific grounds for dismissing the RICO cause of action in the first complaint (Order at 6-7), yet the RICO factual allegations are hardly changed in the FAC, and not materially improved.   The Court should reject the RICO cause of action again.

FACTUAL BACKGROUND[2]

The Mortgage Agreements and Practices At Issue

As the Court is already aware (Order at 2-3 and 4-6),[3] Homeowners' mortgage contracts expressly provide that in the event their loan is in default, Nationstar can inspect their properties and "do and pay for whatever is reasonable or appropriate to protect [the] Lender's interest in the Property."  *Hill v. Nationstar Mortg. LLC*, No. 15-cv-60106, Complaint (Dkt No. 1) ("Compl.") Exs. B and C at ¶ 9 (Exhibits B and C are referred to as the "Mortgages").   Homeowners acknowledge that inspections are permitted by the Mortgages and that they "must reimburse Loan Servicers like Nationstar for property inspection fees and other default servicing fees." FAC ¶¶ 21, 45.   As Defendants explained in their original motion, courts have interpreted that and similar language in standard home mortgages to "unequivocally permit[] the lender" to conduct property inspections "and then charge them to the borrower."  *Majchrowski v. Norwest Mortg., Inc.*, 6 F. Supp. 2d 946, 964-65 (N.D. Ill. 1998); *see also In re Baber*, 523 B.R. 156, 162

---

[2] Factual allegations taken from the FAC are taken as true only for purposes of this motion. Defendants specifically deny any liability, and deny that any class could be certified in this case.

[3] Homeowners appear to take the position that the property inspection charges are "extrinsic to any contractual relationship."  FAC ¶ 61.  Given Homeowners' admission that they agreed "in their mortgage contracts" to allow property inspections (id. ¶ 45) and Homeowners' heavy reliance on the "reasonable or appropriate" term of their mortgage contracts (*see, e.g.*, *id.* ¶¶ 3, 47, and 61), Defendants are at a loss to understand the basis of this assertion.

(Bankr. E.D. Ark. 2014); *McFarland v. Wells Fargo Bank, N.A.*, 19 F. Supp. 3d 663, 676-77 (S.D.W.Va. 2014). Industry loan servicing guidelines, to which Homeowners generally refer and which were discussed in Defendants' prior motion to dismiss, require these inspections with regularity to determine occupancy, to observe the general condition of the property, and to identify necessary upkeep or repairs. FAC ¶ 45; Motion to Dismiss (Dkt. No. 13), at 3-4.

Nationstar services both the Hill loan and the Shaikh loan. FAC ¶ 1. During 2014, it ordered property inspections on multiple occasions, on both couples' properties. In all instances, Nationstar engaged its affiliate, defendant Solutionstar Settlement Services LLC ("Solutionstar"), to arrange for someone to physically conduct the inspections and prepare the necessary reports. FAC ¶ 52.

Homeowners allege that the inspections are too frequent and often unnecessary. FAC ¶ 18. They also assert that the associated fees, which Homeowners admit they are responsible to pay, are too high. *Id.* ¶ 7. In particular, the FAC alleges that Solutionstar charges Nationstar a $15 fee for each inspection, but does not pay that amount to the inspectors because it instead retains a portion of the fee while supposedly doing no work. FAC ¶ 19.

Allegations as to the Hills

In 2007, the Hills obtained a mortgage loan secured by real property located in Fort Lauderdale. FAC ¶ 11. Their Mortgage, which is now serviced by Nationstar, was originated by The Addison Mortgage Group and was prepared using a Fannie Mae/Freddie Mac Uniform Instrument ("Fannie Mae/Freddie Mac form"). *Id.* In October 2011, the Hills defaulted on their loan obligations, and thereafter that Nationstar ordered a number of property inspections. *Id.* ¶ 79. The Hills allege that the fees charged to their account for property inspections were excessive and unnecessary, including two inspection charges they assert that were each "dated"

September 30, 2014.  FAC ¶ 79.  The Hills allege these property inspection fees have been "rolled" into their principal balance as part of a loan modification.  *Id.* at ¶ 84.

<u>Allegations as to the Shaikhs</u>

In 2005, the Shaikhs obtained their loan secured by property located in Miami. FAC ¶ 12.  Their Mortgage, which is now serviced by Nationstar, was originated by First Magnus Financial Corporation, and was also prepared using a Fannie Mae/Freddie Mac form. *Id.*  In August 2009, the Shaikhs defaulted on their loan; they do not allege that they paid Nationstar (or anyone) anything since.  *Id.*  The Shaikhs allege that Nationstar has charged them excessive fees for property inspections, including, *inter alia*, for three inspections between May 27, 2014 and June 18, 2014.  FAC ¶ 73.  The Shaikhs do not allege that they have paid any of the fees allegedly assessed for property inspections.

<u>Pre-Suit Notices</u>

Each of the Mortgages contained a pre-suit notice requirement.  Compl. Exs. B and C at ¶ 20.  The Hills allege that they complied with that obligation when their lawyer (one of their counsel in this Court) sent a "request for information" to Nationstar on November 25, 2014. FAC ¶¶ 81-82.  They allege that this letter "request[ed] a detailed explanation of the charges[,] notif[ied] Nationstar that the inspections were improper, and request[ed] that Nationstar cease the[] unlawful inspections."  FAC ¶ 81.  Similarly, the Shaikhs allege that they sent a "request for information" to Nationstar on September 24, 2014.  FAC ¶¶ 76-77.  The Shaikhs allege that this letter challenged three inspections, "request[ed] a detailed explanation of the charges[,] and request[ed] that Nationstar cease the[] unlawful inspections."  FAC ¶ 76.

## <u>ARGUMENT</u>

I.    **HOMEOWNERS DID NOT COMPLY WITH THE REQUIREMENT THAT THEY PROVIDE PRE-SUIT NOTICE AND AN OPPORTUNITY TO CURE.**

Homeowners' FAC is barred by the terms of their Mortgages because those contracts require a pre-suit notice which was never given:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or a member of a class) *that arises from the other party's actions pursuant to this Security Instrument* or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) *of such alleged breach* and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

*See* Compl. Exs. B and C at ¶ 20 (emphasis added).[4]   The Mortgages elsewhere provide the right of lenders and loan servicers to inspect each property in the event of default, under certain circumstances.   FAC ¶ 21.   *See e.g.,* Mortgages at ¶ 9   ("If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property, and securing and/or repairing the Property.").   As this Court concluded in its initial dismissal Order*,* because Homeowner's allegations that Defendants "charg[ed] too much for each inspection," "inspect[ed] too frequently," and "inspect[ed] without reason to do so," were all predicated on alleged breaches of the Mortgages, each of the Homeowners' claims were subject to the notice-and-cure requirement.   Order at 6.   Since the Complaint did not allege that the pre-suit notice had been given, this Court dismissed.   *Id.*

---

[4] The Court may take judicial notice of documents central to the Complaint, such as the Homeowners' Mortgages. *Harris v. Ivax Corp.*, 182 F.3d 799, 802, n.2 (11th Cir. 1999).  Those Mortgages are in the court file already, having been attached to the Complaint.

While the FAC now alleges pre-suit notice, those allegations present no reason to save this suit. The pre-suit notice requirement plainly extends to any suit "that arises from the other party's actions pursuant to this Security Instrument," which embraces a claim such as this one that Nationstar improperly exercised its right established in the Mortgages to inspect the Homeowners' properties. Order at 6. Other cases, including from this Court, are in accord that a suit like this is subject to the notice-and-cure requirement in the standard Fannie Mae/Freddie Mac form mortgage. *Trevathan v. Select Portfolio Servicing, Inc.*, --- F.Supp.3d ---, 2015 WL 6913144, *4 (S.D. Fla. Nov. 6, 2015); *St. Breux v. U.S. Bank, N.A.*, 919 F.Supp.2d 1371, 1375 (S.D. Fla. 2013); *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138329, at *2 (E.D. VA Dec. 10, 2010); *Niyaz v. Bank of Am.*, 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011).

Homeowners apparently believe that the pre-suit notice requirement does not apply because the cause of action in this case arises under RICO, and not breach of contract. *See, e.g.*, FAC ¶ 21. As this Court has recognized, in this case and other cases, under the express terms of the Mortgages, the form of action does not matter; the issue is whether the claim "arises from the other party's actions pursuant to this Security Instrument." Order at 6; *Trevathan*, 2015 WL 6913144, *4. That Homeowners (wrongfully) assert that Nationstar had no right to inspect (or to charge), or that they seek to recover damages only under RICO, does not change the fact this suit "arises from" Nationstar's actions under the Mortgages. This suit is plainly is governed by the pre-suit notice-and-cure requirement.

And while they did communicate with Nationstar before this suit, Homeowners' pre-suit information request does not satisfy the contractual requirement that they "notif[y] the other party . . . ***of such alleged breach*** and afford[ ] the other party hereto a reasonable period after the giving of such notice to take corrective action." Compl. Exs. B and C at ¶ 20 (emphasis added).

6

Homeowners point only to "requests for information" letters ("Letters") they sent, which mentioned an objection to the inspection fees.  FAC, ¶¶ 76-77 and 81-82.[5]  Each Letter stated only an objection to the fees on the ground that "the subject property is currently occupied and my clients have not allowed the property to deteriorate or commit waste on the property."  Mot. for Recon., Ex. A at 2; Ex. B at 2.[6]  Neither said anything about what is now the sole claim in the FAC—that Nationstar and Solutionstar allegedly engaged in a RICO conspiracy with "a web of outside vendors" to automatically assess inspection fees repeatedly (more often than once per month) through a computerized system, and that the Defendants supposedly had inflated the per-inspection charge to fund the payment of a kickback. FAC ¶¶ 1-5; *see also* Joint Conference Report (Dkt. No. 18), at 2-3 ("Plaintiffs' Statement;" reciting the nature of the claims without referring to any issue about property occupancy).

Since this suit is founded on a completely-different alleged failure by Nationstar than the one alleged in the Letters, Homeowners did not give effective notice of "such alleged breach." The Letters did not satisfy the pre-suit notice requirement.  *See*, *e.g.*, *Spasojevic v. Wells Fargo Bank, N.A.*, 2014 WL 222942, *2 (M.D. Fla Jan. 21, 2014) (dismissing case where pre-suit letter merely warned of possible suit without specifying an "alleged breach").

That the Letters gave no notice of these claim set forth in the FAC is also clear from Nationstar's responses.  Because the only claim advanced in the Letters was that inspections were inappropriate because the property was occupied and not deteriorating, Nationstar's response to one letter pointed Homeowners to the provisions of the relevant security instruments

---

[5]   The Letters are in the record, having been filed by Homeowners as grounds for their reconsideration motion. (Motion for Reconsideration (Dkt. No. 25), Exs. A and Ex. B)

[6] The Hills' Letter, but not the Shaikhs' Letter, added that "[i]t is our position that the monthly property inspections you have been conducting are not reasonable under the mortgage and the fees for the inspection that you have been charging to this account constitute an 'error' pursuant to 12 C.F.R. § 1024.35(b)(5)."  Motion for Reconsideration, Ex. A at 2.

allowing Nationstar broad authority to "[i]nspect the property and charge applicable fees," (Motion for Reconsideration, Ex. C at 3), and to the other letter simply stated that "based on the [delinquent] status of the account" inspections "are required." *Id.*, Ex. D. Since the governing mortgages do not limit inspections to vacant properties or to ones where the occupant is threatening the collateral, it is not surprising that no "corrective action" was taken by Defendants in response to these notices. It would be an unreasonable reading of the contracts to suggest that the individualized complaints in the Letters were somehow sufficient to give Defendants notice of the type of sweeping attack that is being levelled in this suit.

The FAC must be dismissed because Homeowners did not comply with the notice-and-cure provision of their Mortgages.

## II.     THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM.

This Court previously dismissed Homeowners RICO cause of action, as plead in the original Complaint, finding: "Plaintiffs' federal and state RICO causes of action have multiple defects, including that Plaintiffs' have failed to sufficiently plead facts to establish a cognizable enterprise, a pattern of racketeering activity, and RICO injury." Order at 6-7. Homeowners sought reconsideration, in part by arguing at length that the dismissal of the RICO cause of action was error. Motion for Reconsideration at 12-17; Reply in Support of Motion for Reconsideration (Dkt. No. 27), at 6-10. The Court found there to be no basis for reconsideration of the dismissal of the RICO claim. Reconsideration Order (Dkt. No. 28), at 6.

Homeowners' abandonment in the FAC of all causes of action other than RICO, and their attempted repleading of the RICO cause of action, have not changed anything other than cosmetically. The central allegations of their FAC mirror those of their original Complaint. The Homeowners still complain that (1) Nationstar allegedly conducted inspections too frequently; (2) Nationstar allegedly charged them too much; and (3) Solutionstar allegedly retained part of

the inspection fee, causing the overall cost of the fees to be too high.  And they still complain that this garden-variety contract dispute involving them, their loan servicer, and a corporate affiliate to the servicer is somehow a RICO conspiracy involving an "enterprise," racketeering, and RICO injury.  As Defendants previously demonstrated, and this Court previously concluded, these allegations are insufficient.

To state their civil RICO claim, Homeowners must allege, *inter alia*, (1) conduct; (2) of an enterprise; (3) through a pattern of racketeering activity, involving predicate acts of wire or mail fraud; (4) that is the proximate cause of injury to the Homeowners.  *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003).  To make out a factual predicate to meet these standards, Homeowners generally assert that Nationstar and Solutionstar engaged in an alleged "scheme to obtain money by means of false pretenses, representations, or promises" by which they charged the Hills and the Shaikhs fees for property inspections that "were illegally inflated by the kickback retained and were not authorized by law or contract." FAC ¶ 71.  The Homeowners assert that Defendants' disclosure of the inspections conducted, and of the fees charged, amounts to predicate acts of mail and wire fraud.  FAC ¶ 111.  The enterprise through which these activities were purportedly conducted consists (as before) of Nationstar, Solutionstar and the third-party vendors who are alleged to have performed the actual physical inspections.  *E.g.,* FAC ¶¶ 56, 58.

Homeowners' RICO claim fails for three independently sufficient reasons, the same three reasons this Court cited in dismissing that claim when it appeared in the Complaint: Homeowners do not allege a cognizable enterprise; Homeowners do not allege a pattern of racketeering activity; and Homeowners do not sufficiently allege injury.  Order at 6-7.  The suit should be dismissed for this reason as well.

### A.    The FAC Does Not Allege A Cognizable RICO Enterprise.

As before, the alleged "enterprise" in the FAC—Nationstar, Solutionstar and "vendors who perform the property inspections" (FAC ¶ 56 & illustration in FAC page 18)—is not a valid RICO enterprise, and so the FAC fails to state a claim.

In the first Motion to Dismiss, Defendants argued successfully that this enterprise failed the test set forth in *Boyle v. United States*.   There, the Supreme Court defined the pleading requirements for an associated-in-fact enterprise, stating that the RICO enterprise must have at least three features:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  556 U.S. 938, 946 (2009).  The Supreme Court explained that members of the alleged group must share the "common purpose of engaging in a course of conduct" and have sufficient continuity of "interpersonal relationships" showing that the alleged members of the enterprise have "joined together" in order to pursue that purpose.  *Id.* (citations omitted).  In short, the alleged enterprise must *be* something concrete and enduring, not ephemeral or even imaginary.  Like the original Complaint, the FAC's supposed enterprise fails the *Boyle* test.

### 1.    The Vendors Are Not Alleged To Have A Common Purpose Or To Participate In Common Conduct.

In its original motion to dismiss, Defendants explained that Homeowners, instead of alleging an alliance that has come together in a meaningful way, posited an enterprise consisting only of a company and its affiliate and an unnamed number of completely unrelated third parties from which the corporate defendants order legitimate services.  Motion to Dismiss at 10.  This Court agreed that was not enough to plead a RICO enterprise.  Order at 6-7.

Although the FAC contains a handful of new allegations regarding the alleged enterprise, those changes are unable to resurrect Homeowners' attempt to sue under RICO.  The most

obvious change is that, in contrast to the prior Complaint, the FAC actually names two of these property inspection vendors—Safeguard Properties LLC ("Safeguard") and Mortgage Contracting Service ("MCS")—though the FAC also asserts there are numerous unnamed vendors that are part of this imagined enterprise. FAC ¶ 56. This addition is window dressing, for naming two of the vendors does not improve on Homeowners' showing of when, how and why the vendors (named or unnamed) shared a common purpose and associated together for some definite time to accomplish that purpose. *Boyle*, 556 U.S. at 946.

To attempt to show a common purpose, Homeowners now allege that Defendants permit property inspection vendors to access borrower records via a process that "is thorough, burdensome, and not undertaken lightly." FAC ¶ 59. Even assuming that is true, this is not really new, for the original Complaint alleged that the vendors and Defendants benefitted from an electronic interface. *Compare* FAC ¶¶ 52-53 *with* Complaint ¶¶ 81-82. The alleged wider access to information now pled provides no factual enhancement that would allow this Court to conclude that an alleged enterprise involving third-parties who actually compete with each other has come together, under Defendants' invitation, to work together for a common purpose. Instead, that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . would not be enough to show that the individuals were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4. *See also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007).

The FAC's failure to provide factual support for the purported enterprise is a byproduct of its persistent reliance on a "hub-and-spoke" conspiracy, with Nationstar and its affiliate Solutionstar as the alleged hub and each vendor as a separate spoke. Defendants previously argued the insufficiency of such a "hub-and-spoke" enterprise, but Homeowners have done

nothing to address this failing.  Instead, the FAC now has an illustration showing the alleged enterprise, and the schematic illustrates a hub-and-spoke relationship where Defendants are connected separately to each vendor but there is no "rim" connecting the vendors to one another. FAC at p. 18.  The Eleventh Circuit—like numerous other courts—has held that without some sort of "rim", there is no coming together of a group sufficient to make out a claimed RICO associated enterprise.  *United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004) ("[W]here the 'spokes' of a conspiracy have no knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy, but rather as many conspiracies as there are spokes."); *see also, e.g., VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 700 (6th Cir. 2000); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183 (D. Mass. 2003); *N.Y. Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, 1998 WL 695869, at *5 (S.D.N.Y. Oct. 6, 1998) ("Such a scheme is not one true common law conspiracy nor is it a RICO enterprise."); *Cedar Swamp Holdings*, 487 F. Supp. 2d at 450; *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994).

Despite Homeowners' apparent belief that their allegations of a rim-less wheel somehow meet the *Boyle* test, it is not enough to merely allege that there is an enterprise because each "spoke" involves the commission of similar acts in parallel to actors involved in other "spokes." To establish enough continuity to allege a RICO enterprise there must be factual allegations that, if true, would establish the participants on all of the spokes shared a common purpose and worked together or consciously in parallel with each other and with the companies in the hub to achieve that purpose.  *E.g., First Nationwide Bank*, 820 F. Supp. at 98.

Attempting to avoid this failure, the FAC makes conclusory assertions that this alleged enterprise "is an ongoing organization" made up of members that "function as a continuing unit and share a common purpose of maximizing their profits." FAC ¶¶ 57-58. Homeowners further suggest that "[t]he Enterprise is linked through contractual relationships, agreements, access to Nationstar Servicing System, financial ties, and coordination of activities. . . ." FAC ¶ 66. And, just as in the original Complaint, Homeowners attempt to stave off dismissal until after discovery by asserting that "[w]ritten discovery will prove the Enterprise." *Id.*

All of this is plainly insufficient, particularly in light of the admonishment in *Twombly* (itself a conspiracy case) that plaintiffs must plead sufficient facts to show that their claim is plausible, rather than one backed by mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007). Courts have repeatedly held that conclusory assertions that attempt to meet the legal enterprise test, without specific facts, are insufficient to withstand a motion to dismiss. *See*, e.g., *In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 73220, at *118 (D.N.J. Sept. 28, 2007) ("in order to draw a structure cognizable as a RICO enterprise, plaintiffs have to assert actual facts drawing the 'rim' interconnecting Insurer-Defendants, instead of merely stating plaintiffs' conclusion that Insurer-Defendants must have been interconnected") (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d at 184). Nor can pleading requirements be relaxed by promises of what future discovery may reveal. *Ashcroft v. Iqbal*, 556 U.S. 662, 685-6 (2009).

Where, as here, the enterprise theory consists of "a group of commercial third-party entities *apparently unrelated to each other* who contract on a regular basis with some of the Defendants . . . [p]laintiffs have not pled a sufficient association between these third-party

entities for the purposes of a RICO enterprise." *In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1262 (S.D. Fla. 2001) (emphasis in original).

        2.     The FAC Does Not Allege A Plausible Enterprise Because it Contains Essentially No Substance About A Key Element Of The Alleged Enterprise, The Property Inspection Vendors.

Apart from the inadequate nature of the alleged common purpose and conduct, the "enterprise" is too amorphous to meet RICO standards. Even though the key players in the supposed enterprise are the property inspection vendors – for, without them, no RICO claim could be stated, as a parent and its subsidiary cannot be a RICO enterprise standing alone (*see, e.g.*, *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1212-13 (M.D. Fla. 2004)) – the FAC offers no significant allegations about those vendors. The sum of the allegations is that the vendors receive work orders (FAC ¶ 19); conduct inspections (FAC ¶ 56); upload reports (FAC ¶ 53); and have access to the Defendants' computer system. FAC ¶ 59. The allegations about the actual named vendors add nothing, other than the names. *See*, e.g., FAC ¶¶ 56, 67, 79, 73-75, and 85. Finally, the FAC contains the assertion that the vendors pay kickbacks to Solutionstar (FAC ¶ 62), but there are no factual allegations elsewhere in the FAC to explain what is meant by that allegation or to explain what the vendors allegedly do.

Courts have consistently held that a "nebulous, open-ended description . . . does not sufficiently identify" a RICO enterprise for purposes of Rule 8. *Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*, 54 F. Supp. 2d 1127, 1135 (M.D. Fla. 1999) (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995)); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1091 (N.D. Cal. 2006); *accord Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000). The FAC is precisely the kind of vague and nebulous pleading that fails under this standard.

In their earlier Motion, Defendants pointed this Court to *VanDenBroeck*, a Sixth Circuit case involving a somewhat-similar claim. *See* 210 F.3d at 700. In that case, customers of a lender alleged that the defendant mortgage company's relationships with numerous unnamed secondary-market investors, to which the mortgage company sold mortgage loans, constituted a RICO enterprise. The Sixth Circuit, in affirming the dismissal of plaintiff's RICO enterprise allegations, found "[t]here is no allegation that there were a discrete number of secondary lenders that were used, which means that this conspiracy could have transpired with any lender in the secondary lending market" and that the vague and conclusory conspiracy that was alleged "is too unstable and fluid an entity to constitute a RICO enterprise." *Id.* Homeowners have done nothing of substance in the FAC to be more specific than before, despite the dictates of previously-cited cases like *VanDenBroeck*.

If *Boyle* stands for nothing else, it is that the RICO enterprise must actually be some sort of association among identifiable persons. Homeowners offer nothing specific about the vendors—such as where they are, how they are selected and used, how many there are, and what they actually do that is relevant to the supposed criminal purpose of the enterprise. A RICO enterprise is not plausible if there is no substance to assertions about the supposed conspirators.

       3.     Without Any Substantial Allegation About the Vendors, The FAC Does Not Allege An Enterprise Distinct From Its Participants.

At bottom, the FAC states no more than Homeowners' original Complaint did—an alleged enterprise-in-fact consisting of Nationstar and Solutionstar. Yet, to state a cognizable RICO claim Homeowners, "must name a RICO person distinct from the RICO enterprise." *United States v. Goldin Indus.*, 219 F.3d 1268, 1271 (11th Cir. 2000). Homeowners' alleged enterprise fails because affiliated corporate entities, such as a parent and its subsidiary, are insufficiently distinct to satisfy RICO's requirement that a defendant "person" must be distinct

from the alleged enterprise. *Schoedinger v. United HealthCare of the Midwest, Inc.*, 557 F.3d 872, 878 (8th Cir. 2009); *Fogie v. Thorn Ams. Inc.*, 190 F.3d 889, 896-97 (8th Cir. 1999). *See also Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 449 (1st Cir. 2000); *United States v. Computer Scis. Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982).

As before, Homeowners rest on the allegation that "[w]hile Defendants participate in and are members of the Enterprise, they also have a separate and distinct existence apart from the Enterprise." FAC ¶ 67. Conclusory pleadings are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Homeowners have not sufficiently alleged a RICO enterprise.

**B.      Homeowners Have Failed To Plead A Pattern Of Racketeering Activity.**

Despite adding a handful of factual allegations surrounding the inspections, Homeowners still fail to plead a pattern of racketeering activity consisting of at least two related, qualifying predicate acts. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290-91 (11th Cir. 2010). As in the original Complaint, Homeowners assert that Defendants perpetrated the predicate acts of mail or wire fraud (18 U.S.C. §§ 1341, 1343) by sending allegedly-misleading account statements. FAC ¶¶ 71-75, 79, and 85. But, as they must, Homeowners still admit that Nationstar disclosed each inspection and the amount of every charge. FAC ¶ 72 ("These mortgage statements detail the amounts due on loans with certain itemized charges for fees.").

The result of Homeowners' admission that they were informed of each fee is that their mail or wire fraud allegations fall far short of the statutory test. Under the cited statutes, mail or wire fraud occurs when a person "(1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental Ass'n*, 605 F.3d at 1290. The inspections may have been too frequent (which Defendants deny), too expensive (which Defendants also deny), or unnecessary (which, again, Defendants deny),

but Nationstar cannot have committed mail or wire fraud when it told the Homeowners what it was charging for and why.  *In re Checking Account Overdraft Litig.*, 797 F. Supp. 2d 1323, 1330 (S.D. Fla. 2011) ("At best, Plaintiffs allege mail and wire fraud occur where accurate account statements are mailed to customers . . . .  Such cannot be the basis for a RICO claim.").

In an attempt to distract this Court from the fact that their monthly mortgage statements expressly disclose each inspection and its cost, Homeowners insert two new factual allegations regarding the inspections and charges.  First, the FAC asserts that the vendor who inspected the Shaikhs' property was unable to complete its inspection because the Shaikhs' neighborhood is gated.  FAC ¶ 74.  Second, the FAC alleges that Defendants used the wires "in furtherance of the fraudulent scheme" by electronically ordering property inspections, assessing fees, and providing payments to property-inspection vendors.  FAC ¶ 85.  Neither of these allegations saves the FAC because neither changes the fact that Nationstar expressly disclosed each property inspection and its costs to the Homeowners.  FAC ¶ 72.

To skirt this issue, Homeowners apparently will contend, as they contended previously and which this Court previously rejected, that fraud occurred because "[b]y issuing mortgage statements. . . Nationstar represented to Plaintiffs . . . that all amounts listed were lawful and appropriate fees and charges."  FAC ¶ 72.  This does not meet the pleading requirements of Rule 9(b), which applies to all RICO claims based on alleged fraud.  *Am Dental Ass'n*, 605 F.3d at 1291.  Among other things, to satisfy that Rule, Homeowners' FAC must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Id.*  Homeowners' bare assertion that "[b]y issuing monthly statements"  Nationstar "represented" something is not enough – they must

point to "the precise statements, documents, or misrepresentations made." *Id. See AstroTel, Inc. v. Verizon Fla., LLC*, 2012 WL 1581596, at *6 (M.D. Fla. May 4, 2012) (nonspecific allegations of improper charges did not meet Rule 9(b) requirements).[7]

Similarly, Homeowners may suggest that mail or wire fraud occurred by omission, because the monthly statements "omitted Solutionstar's role and affiliation with Nationstar." FAC ¶ 72.  Although omission can form a basis for fraud in some circumstances, it qualifies only when that omission is "material" and "intended to create a false impression."  *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000).  The omission of Solutionstar's role in Nationstar's loan servicing is not material as a matter of law because a reasonable person deciding whether or not to pay a fee "would not have relied on such an omission."  *Beck v. Prupis*, 162 F.3d 1090, 1096 (11th Cir. 1998).  It strains credulity to suggest that a homeowner faced with a $15 inspection-fee charge would pay the fee if his mortgage statement omitted reference to a servicing vendor, but refuse to pay if he was told a vendor had been involved.

Additionally, the omission of disclosure about Solutionstar's role is not "intended to create a false impression," as a matter of law, because Homeowners do not allege that the mortgage statements suggest Nationstar itself inspected their properties or that the Homeowners cared who did.  As a mortgage servicer, Nationstar was under no obligation to disclose its relationship with Solutionstar.  See *Langford*, 231 F.3d at 1313-14.[8]  Thus, Homeowners'

---

[7]  Homeowners cannot make this allegation, because Nationstar made no representation on its monthly statement that fees "were lawful or appropriate."  Compl. Exs. D and E (monthly mortgage statements attached to original Complaint).

[8]  Generally, the relationship between debtor and creditor under Florida law is neither fiduciary in nature nor special, so there is no duty to disclose.  *See Carpenter v. Cmty. Bank of Homestead*, 710 So.2d 65, 66 (Fla. Dist. Ct. App. 1998).  Nationstar has not concealed its relationship with Solutionstar in any event, as Homeowners themselves acknowledge.  *See* FAC ¶ 63 (citing Nationstar's SEC filings identifying Solutionstar).

assertion that Defendants "omitted Solutionstar's role and affiliation with Nationstar" does not save their RICO claims.

      **C.     Homeowners Have Not Pled The Alleged Acts Caused Them Injury.**

     Homeowners' RICO claim also must be dismissed because the FAC has not sufficiently pled that Defendants' alleged violation of RICO caused the Homeowners to suffer injury.

     As an initial matter, the Shaikhs have not alleged that they have ever paid any of the allegedly fraudulent charges.  Instead, they admit "[t]hese charges remain due and owing to Nationstar." FAC ¶ 75.  The Shaikhs have no injury, and their claim fails on this basis.  *Viridis Corp. v. TCA Global Credit Master Fund, LP*, No. 15-cv-61706, Order (Dkt. 68) at 15 (S.D. Fla. Dec. 17, 2015) (dismissing RICO claim for lack of standing where plaintiffs failed to sufficiently allege damages).

     Apart from that failing, the claims of both the Shaikhs and the Hills must be dismissed for the additional reason that neither set of plaintiffs have alleged causation, a RICO requirement that here would require a showing of reliance on the allegedly-fraudulent statements.  "It is well established that under both Section 1964 and 1962(c), the Complaint must satisfactorily tie the alleged racketeering activity to the Plaintiff's injury." *S.E. Laborers Health and Welfare Fund v. Bayer Corp.*, 655 F.Supp.2d 1270, 1278 (S.D. Fla. 2009).   Even if Homeowners could plausibly claim mail or wire fraud, the FAC does not allege that such deception was material to them, that the deception caused them to do anything different, or that they relied on it.  *Viridis*, No. 15-cv-61706, Order (Dkt. 68) at 15-16 (dismissing RICO claim, in the alternative, because plaintiffs failed to allege proximate causation).

     Homeowners' failure to allege that the purportedly fraudulent statements proximately caused some them some loss is undisputed, and fatal to their RICO claim.  Homeowners' suit must be dismissed.

Case 0:15-cv-60106-WPD   Document 32   Entered on FLSD Docket 12/18/2015   Page 21 of 22

**<u>CONCLUSION</u>**

For the foregoing reasons, the FAC should be dismissed.

As the FAC was Homeowners' second chance at pleading the same cause of action, and they failed to state a claim for essentially the same reasons in each instance, the dismissal should be entered with prejudice.

Respectfully submitted,

Date:  December 18, 2015

**AKERMAN LLP**
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel. 305-374-5600
Fax 305-374-5095

/s/ Brendan I. Herbert
WILLIAM P. HELLER, ESQ.
Florida Bar No. 987263
E-mail:  william.heller@akerman.com
LAWRENCE D. SILVERMAN, ESQ.
Florida Bar No. 007160
E-mail: lawrence.silverman@akerman.com
BRENDAN I. HERBERT, ESQ.
Florida Bar No. 076925
E-mail: brendan.herbert@akerman.com

Thomas M. Hefferon, Esq. (*Of Counsel*)
John C. Raffetto, Esq. (*Of Counsel*)
Goodwin Procter, LLP
901 New York Ave., NW
Washington, DC 20001
THefferon@goodwinprocter.com
JRaffetto@goodwinprocter.com

*Counsel for Defendants Nationstar Mortgage LLC
and Solutionstar Settlement Services LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of *Defendants' Motion to Dismiss* was served on December 18, 2015, on all counsel or parties of record on the following Service List via CM/ECF.

/s/ Brendan I. Herbert_____
Attorney

**<u>Service List</u>**
***Hill, et al. v. Nationstar Mortgage LLC and Solutionstar***
**<u>Case No. 15-cv-60106-Dimitrouleas/Snow</u>**
**<u>U.S. District Court, Southern District of Florida</u>**

**Counsel for Plaintiffs**
(service by CM/ECF)

Yechezkwel Rodal, Esq.
LOAN LAWYERS LLC
2150 S. Andrews Avenue, 2nd Floor
Ft. Lauderdale, Florida  33316
Tel.: (954) 523-4357
Email: Chezky@Floridaloanlawyers.com

Shanon J. Carson, Esq.
Patrick F. Madden, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel: (215) 875-4656
Email:  scarson@bm.net
Email:  pmadden@bm.net